SPARTANBURG COUNTY v. MILLER, COUNTY TREASURER, ET AL.

(132 S. E., 673)

1. Constitutional Law—In Proceeding to Compel Performance of Statutory Duty, Officer Cannot Ordinarily Assert Unconstitutionality of Statute Unless He Has Personal Interest.—When mandamus is sought to compel officer to perform statutory duty, Court will not generally permit officer to assert that statute is unconstitutional, though exception exists where officer has personal interest.

2. Constitutional Law—County Treasurer in Mandamus Proceedings Held Not Entitled to Question Constitutionality of Statute Providing for Audit of His Books (Act March 24, 1924, § 2, 33 St. at Large, Page 1451).—Treasurer of Spartanburg County, in mandamus proceedings to compel him to permit auditors, acting under Act March 24, 1924, § 2, 33 St. at Large, page 1451, to count the cash in his office, *held* to have no personal interest and not entitled to question constitutionality of the statute.

3. Statutes—County Supply Bill Having Provision for Audit of County Offices and Institutions Held Not Violative of Constitutional Requirement That It Relate to One Subject Expressed in Its Title (Act March 24, 1924, 33 St. at Large, Page 1451; Const., Art. 3, § 17).—Act March 24, 1924, 33 St. at Large, page 1451, entitled as an ordinary County Supply Bill having to do with general subject of levying taxes for "county purposes" and with expenditures thereof, which in Section 2 provides for audit of the county offices and institutions, *held* not violative of Const., Art. 3, § 17, requiring every Act to relate to but one subject expressed in its title.

---

Note: Unconstitutionality of statute as defense against mandamus to compel its enforcement, see notes in 47 L. R. A., 512; 24 L. R. A. (N. S.), 1260; 34 L. R. A. (N. S.), 1060.

4. Statutes—Statute Providing for Audit of Particular Counties, Offices, and Institutions Held Not Invalid as Local or Special Law (Act March 24, 1924, § 2, 34 St. at Large, Page 1451; Const., Art. 3, § 34, Subd. 9; Code Civ. Proc. 1922, § 566; 33 St. at Large, Page 1234; Const., Art. 7, § 11).—Act March 24, 1924, 34 St. at Large, page 1451, providing, in Section 2, for audit of county offices and institutions of Spartanburg County, *held* not violative of Const., Art. 3, § 34, Subd. 9, prohibiting special laws where a general law can be made applicable in view of Code Civ. Proc. 1922, § 566; 33 St. at Large, page 1234, and Const., Art. 7, § 11.

5. Constitutional Law—Statute Providing for Audit of County Offices and Institutions Under Supervision of the Legislative Delegation Held Not to Confer Executive Duties and Functions on Persons Exercising Functions of Legislative Department (Act March 24, 1924, 33 St. at Large, Page 1451; Const., Art. 1, § 14).—Act March 24, 1924, 33 St. at Large, page 1451, providing, in Section 2, for an audit of offices and institutions of Spartanburg County and authorizing legislative delegation of that County to select accountants, remove them for cause, fix their compensation, etc., *held* not to infringe Const., Art. 1, § 14, by conferring on persons exercising legislative functions, duties and functions of executive department.

6. Constitutional Law—Legislature Can Exercise Nonlegislative Functions Only to Extent Necessary to Effective Performance of Legislative Powers.—The Legislature may properly engage in the discharge of nonlegislative functions only so far as is reasonably incidental to full and effective exercise of legislative powers.

7. Constitutional Law.—It is the duty of the judiciary to uphold constitutionality of a statute unless its invalidity is manifest beyond reasonable doubt.

8. Counties.—Office of County Treasurer of Spartanburg County *held* within scope of audit "of the county offices and institutions," provided for by Act March 24, § 2, 33 St. at Large, page 1451.

9. Counties—Statute Providing for Audit of County Offices by Certified Public Accountant Held Sufficiently Complied With by Employment of Firm, One Member of Which Was Registered Under Laws of State, and County Treasurer Unjustified in Refusing to Permit Necessary Examination (Act March 24, 1924, § 2, 33 St. at Large, Page 1451).—Act March 24, 1924, § 2, 33 St. at Large, page 1451, providing for an audit of offices and institutions of Spartanburg County by "certified public accountant *or* accountants" employed by county legislative delegation, *held* to contemplate employment of public accountants, certified under the law of South Carolina, and sufficiently complied with by employment of firm, one member of which was registered under laws

of South Carolina and resident of Spartanburg County, and County Treasurer not justified in refusing to permit other members of firm to make necessary examination of his office.

Original proceeding by Spartanburg County for a writ of mandamus to be directed against L. G. Miller, as County Treasurer of Spartanburg County, and another writ granted.

November 7, 1924.

The opinion of the Court was delivered by Mr. Justice Marion.

By a proceeding in the original jurisdiction of this Court, the petitioner seeks a writ of mandamus to compel the treasurer of Spartanburg County to permit certain auditors, employed by the legislative delegation of the county, to "count the cash" in the treasurer's office.

Petitioner's right to the relief demanded is referred to and predicated upon the terms and provisions of Section 2 of an Act of the General Assembly (33 Stat. 1451) approved March 24, 1924, entitled "An act to provide for the levy of taxes for school and county purpose for the year 1924, and to direct the expenditures thereof for Spartanburg County," which section is in part, as follows:

"Sec. 2. For the purpose of making a complete and comprehensive audit of the County offices and institutions, and paying the expenses thereof the sum of ten thousand ($10,000.00) dollars is hereby appropriated, if so much be necessary, the amount to be paid in such installments and at such times as may be prescribed herein.

"Provided, a certified public accountant or accountants shall be employed by the county delegation in the General Assembly or a majority thereof to make a complete audit of the books and accounts and official acts of all officers, offices and institutions of the County of Spartanburg to extend back for a period of six years from the first day of January, 1918, and up to and including the year 1924.

"Provided, further, that all officers, agents or employees.

of the County of Spartanburg are required to exhibit and deliver to said accountants all books, accounts, vouchers, documents or records of any kind whatsoever in their possession or on file in their offices, or in their personal control whenever demanded by said accountant, or accountants and to account for all money held by them in any capacity in which they may be liable on their official bonds," etc.

Petitioner alleges, in substance, that in pursuance of the powers thus conferred upon them by the said act the "Spartaburg County delegation did employ Eaton, Saussy & Co., certified public accountants, to make an audit of the officers and offices, etc., in said county, including in such employment the office of the county treasurer of said county, and authorized said accountants to go into said office, examine the books, records, and accounts thereof, and to do whatever might be necessary to make and render a true audit thereof, with the view of ascertaining and reporting to said delegation the true status and condition of said office and of said county treasurer in his relations with the finances of said county"; that on two separate occasions the county treasurer refused to permit accountants, representing Eaton, Saussy & Co., to count his cash or to make such investigation of his office as would enable them to ascertain what amount of cash was in his official possession or control; and that it is impossible for the auditors employed to make a complete and comprehensive audit of said office, without knowing the amount of cash the officer has on hand and "checking same against his prior accounts and records," etc.

In his return, the respondent L. G. Miller, county treasurer, undertakes to raise numerous questions of law and fact. Broadly, the petitioner's right to the writ of mandamus sought is denied and resisted by the treasurer upon two grounds: (1) That the provisions of the Act of 1924, under which certain parties claiming to proceed

thereunder have sought to count the cash in his office, are unconstitutional and void; and (2) that, even if that Act is valid, no proper and adequate demand thereunder has ever in fact been made on him by persons legally authorized to audit the affairs of his office, and that he has never at any time failed or refused to perform any official duty in that regard imposed by the Act of 1924 or by any other law. The return of the comptroller general, formally made a party to the proceeding, raises no issue of fact or question of law which requires separate notice or treatment. Such of the specific contentions of the county treasurer as are deemed material to a disposition of the cause on its merits will be adverted to and considered in the following discussion.

We will first consider the contention that the Act of 1924, relied upon by petitioner, is unconstitutional. Unquestionably, the rule recognized and approved in numerous decisions of this Court is that, "when mandamus is sought to compel an officer to perform a duty enjoined by statute, the Court will not generally permit the officer to assert that the statute is unconstitutional." *Fooshe v. Burley,* 61 S. E., 255, 257; 80 S. C., 127; 131 (16 L. R. A., [N. S.] 266), and cases therein cited in support of the foregoing proposition. In a note to the case of *State v. Cease* (114 P. 251; 28 Okl. 271), at page 152, Ann. Cas. 1912-D, it is said:

"The trend of recent decisions is strongly in accord with the doctrine laid down in the reported case, that a law is presumed to be, and must be treated and acted on by a ministerial officer as, constitutional until its unconstitutionality or illegality has been judicially established, and that such officer cannot question its constitutionality." (Citing cases.)

It is true, as pointed out in *Fooshe v. Burley, supra,* that that rule is subject to the limitation that:

"If the nature of the office is such as to require the

officer to raise the question, or if his personal interest is such as to entitle him to do so, he may contest the validity of the statute in a mandamus proceeding brought to enforce it."

But in this case it has not been made to appear that the respondent, L. G. Miller, county treasurer, has any such personal interest as would entitle him to contest the validity of the act in question . Certainly, it cannot be assumed that a public officer has any such personal rights of privacy or of property as would exempt his offical conduct from supervision or the affiars of his office from inquisition in accordance with the mandate of the supreme lawmaking power of the government.  We are therefore clearly of the opinion that in the state of the present record the respondent is not entitled to challenge the constitutionality of the statute, and that petitioner is entitled to have the constitutional objections raised overruled on that ground.

Inasmuch, however, as petitioner has not made the point that the question of the constitutionality of the Act could not be raised in this proceeding, and as there are considerations suggested by the nature of the controversy which more or less clearly indicate that it would be desirable in the public interest to have the question of the constitutionality of the statute settled without further delay, we will not decline to pass on the constitutional objections raised.

The first of these is that the act infringes section 17 of Article 3 of the Constitution, requiring that.

"Every act or resolution having the force of law shall relate to but one subject and that shall be expressed in the title."

The title of the Act here involved is that of the ordinary county supply bill, having to do with the general subject of the levying of taxes for "county" purposes and with the expenditure thereof for such purposes.  That general sub-

ject is clearly expressed in the title of this Act.   If, therefore, the provisions of Section 2, which are here assailed, direct the expenditure of tax money for a county purpose, they are clearly embraced within the general subject expressed in the title.   That an expenditure of money "for the purpose of making a complete and comprehensive audit of the county offices and institutions" is for a county purpose, within the meaning of the term "county purposes" as used in the title of the Act, would seem obvious.   And in so far as the expenditure directed in Section 2 is authorized, subject to certain conditions therein prescribed as to the qualification of the accountants, methods of employment, etc., and in so far as the section imposes upon county officers the duty of exhibiting their books, records, etc., and of accounting to the auditors "for all money held by them in any capacity for which they may be liable on their official bonds," etc., we think the provisions relate to details of legislation reasonably incidental to carrying out the specific purpose for which the appropriation is made and clearly germane to the general subject expressed in the title.   If so, the applicable and controlling principle of construction is that stated in *Lillard v. Melton,* 87 S. E., 421, 423; 103 S. C., 10, 14; and quoted with approval in the recent case of *Poulnot v. Cantwell,* 123 S. E., 651; 129 S. C., 171; as follows:

"When the general subject is expressed in the title, any details of legislation which provide the means, methods, or instrumentalities which are intended to facilitate the accomplishment of the general purpose, and are germane to it, may be embraced in the body of the act without violating this provision of the Constitution.   *State v. O' Day,* 54 S. E., 607; 74 S. C., 449; *Aycock-Little Co., v. Railway,* 57 S. E., 27; 76 S. C., 331; *Johnson v. Commissioners,* 81 S. E., 502; 97 S. C., 212."

The contention that the act violates Section 17 of Article 3 of the Constitution is therefore overruled.

The second objection urged is that the act contravenes Subdivision 9, § 34, of Article 3, of the Constitution, which forbids the enactment of local or special laws in any case where a general law can be made applicable. It is contended that so much of the act as provides for an audit of the offices and institutions of Spartanburg County deals with a matter that not only could be, but was already, covered and controlled by general laws conferring on grand juries the power to employ expert accountants for that purpose (Section 566, Code of Civ. Proc. 1922), and authorizing and requiring the comptroller general to make annual audits of county offices (33 Stat. 1234). That contention we think is untenable. That the definite legislative object here in view was not accomplished by any general law then in force, and that it could not be adequately encompassed and effectuated by a general law, the General Assembly has, in effect, declared by enacting this statute. The Legislature's conclusion upon that question, as was said by this Court (Hydrick, A. J. in *Thomas v. Ry., G & E. Co.,* 85 S. E., 50, 51, 100; S. C., 478, 481;), "should not be overruled by the Courts, if there is any reasonable hypothesis upon which that decision can be predicated." Since it is apparent that a statutory provision for expending, under certain conditions, the sum of $10,000 for auditing the offices and institutions of a particular county, must of necessity be special and local in its application, it would seem clear that there is adequate basis in reason for the legislative decision that no general law was or could "be made applicable" in this case. If so, the legislative judgment in that regard may not soundly be impeached by the Courts. That conclusion is reenforced by an additional consideration. Section 11, Art. 7, of the Constitution expressly empowers the General Assembly to "make special provision for municipal government." In *State v. Touchberry,* 113 S. E., 345, 346; 121 S. C., 5, 9, it is said:

"The term 'municipal government' as there used has been construed by this Court to refer to and embrace the governmental affairs of counties. *Grocery Co. v. Burnet,* 39 S. E., 381; 61 S. C., 213, 214; 158 L. R. A., 687; *Carroll v. York,* 95 S. E., 121; 109 S. C., 1."

Making an "audit of the county offices and institutions, and paying the expenses thereof," would seem to be a matter clearly within the legitimate province of the government of a particular county for which the General Assembly might properly "make special provision" from time to time as local conditions and peculiar circumstances might justify, under the foregoing provision of Sec. 11, of Art. 7, of the Constitution. In any view, therefore, we are of the opinion that no conclusive reason appears for setting aside the legislative judgment that a general law was not and could not be made applicable to accomplish the object of this particular legislation.

The third proposition advanced is that the Act contravenes Section 14, Article 1, of the Constitution, which provides that:

"The legislative, executive and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

It is contended that, in so far as this act authorizes or attempts to authorize and empower the legislative delegation of Spartanburg county to select and employ accountants, to remove them for cause, to fix by contract the compensation of such accountants, and to approve vouchers for their payment, it infringes the foregoing constitutional provision by conferring upon persons exercising the functions of the legislative department of government the duties and functions of the executive department. The question presented is not free from difficulty. The members of the Legislature from Spartan-

burg county were elected for the purpose of making laws, not administering them. That as a general rule the Legislature of the state may not, consistently with the constitutional requirement here involved, undertake both to pass laws and to execute them by setting its own members to the task of discharging such functions by virtue of their offices as legislators, would seem to be self-evident. The principle, as we apprehend, upon the correct application of which depends the solution of any such problem as to the exercise by the Legislature of nonlegislative functions, is that the Legislature may properly engage in the discharge of such functions to the extent, and to the extent only, that their performance is reasonably incidental to the full and effective exercise of its legislative powers. Thus it has been said:

"Administrative duties are frequently required to be performed in order to give full operation to and to make effective the respective powers of the Legislature and judiciary as well as the executive." 6 R. C. L. 150; § 149.

See *Stockman v. Leddy*, 129 P. 220; 55 Colo. 24, and note, Ann. Cas. 1916B, 1055.

Applying that principle, in the light of the fundamental rule that it is the duty of the judiciary to uphold constitutionality of a statute unless its invalidity is manifest beyound a reasonable doubt (*State v. Hammond*, 44 S. C., 797; 66 S. C., 219; *Battle v. Willcox*, 122 S. E., 517; 128 S. C., 500), we cannot hold that the statute here in question is so clearly violative of the provisions of Section 14, Art. 1, of the Constitution, as to require that it be stricken down. It is the duty of the Legislature, unquestionably, so to legislate as to provide an adequate and efficient system of county government. In order properly to discharge that duty, conceivably it may become necessary or desirable from time to time to conduct investigations and to obtain information as to the condition of regularly constituted administrative offices, and

24—S. C.—135.

to ascertain the manner in which the duties of the executive department of the government are being discharged. As was said by this Court in *Ex parte Parker,* 55 S. E., 122; 74 S. C., 466; 114 Am. St. Rep., 1011; 7 Ann. Cas., 874:

"The power of the General Assembly to obtain information on any subject upon which it has power to legislate, with a view to its enlightenment and guidance, is so obviously essential to the performance of legislative functions that it has always been exercised without question."

It has been expressly held by this Court that the power of appointment to public office does not belong exclusively to the executive department (*Elledge v. Wharton,* 71 S. E., 657; 89 S. C., 113; *State v. Bowden,* 75 S. E., 866; 92 S. C., 393), and that the supervision of public work is not an inherent function of the executive department (*Little v. Willimon,* 87 S. E., 435; 103 S. C., 50 ). In the cases cited, acts vesting county delegations with certain powers of appointment to office and imposing .certain duties as to the supervision of administrative service upon such delegations, were upheld against attack upon the ground that they contravened the constitutional inhibition against the encroachment of the legislative upon the executive department .of government. In the case at bar, it is fair to assume that the purpose, or certainly one of the purposes, of the "complete and comprehensive audit of county officers, etc., authorized by this Act, was to obtain information needed by the General Assembly in the exercise of its .strictly legislative functions and duties. If so, in so far as administrative duties, are imposed by this Act upon members of the Legislature, the discharge of such executive functions may properly be regarded as incidental to and comprehended within the scope of their legislative duties. If, for example, duties of the character here imposed upon the Spartanburg delegation had been imposed upon a legislative committee appointed to investigate the affairs of

the state penitentiary, it would scarcely be contended that, in committing such functions to its own members, the Legislature had transcended the bounds of its constitutional authority. That the condition of the offices and institutions of Spartanburg County are as legitimate a subject of legislative inquiry and action as the state penitentiary is not open to dispute. In that view, and for the reasons indicated, the objection based upon Section 14, Art. 1, of the Constitution must be overruled.

But, in the view that the statute is valid, the respondent Miller says, in the first place, that it does not apply to the office of county treasurer, for the reason that such office is a state office and not a county office within the meaning of the act; and, in the second place, even if the act is applicable to his office, that he has been guilty of no such default in the performance of any official duty as would entitle the petitioner to a writ of mandamus.

The first contention, that the office of county treasurer is not one of the county officers included within the scope of the audit authorized by the act, is, we think, so plainly untenable as not to require argumentative discussion.

The second contention, that he has not defaulted in the performance of any official duty, is, as we understand, based substantially on the proposition that under the terms of the act the only persons to whom respondent is required to exhibit his books and disclose his cash, etc., are auditors (1) who are duly employed by the county delegation of Spartanburg county, and (2) who are "certified public accountants" under the laws of South Carolina. Respondent avers that he has not at any time refused to permit any accountants so qualified to examine his books etc., or to count his cash.

The facts in this connection appear to be substantially as follows: The county delegation employed the firm of Eaton, Saussy & Co. to make the audit of county offices,

etc., authorized by the act. That firm was composed of six members, with an office, in charge of H. S. Blanton, at Spartanburg, S. C., and its principal headquarters at Savannah, Ga. Three of the six members of the firm were H. S. Blanton, S. T. Lee, and S. P. Driscoll. H. S. Blanton, a resident of Spartanburg, was a registered, certified public accountant under the laws of South Carolina, and Lee and Driscoll were certified public accountants under the laws of Georgia. Much of the work of auditing the offices of Spartanburg county appears to have been done by Lee and Driscoll, and the demands made to count the cash of the county treasurer's office were made by Lee and Driscoll. In that situation was the county treasurer entitled to refuse to permit Lee and Driscoll to count his cash for the reason that they were not registered as certified public accountants under the laws of South Carolina? The language of the statute is:

"A certified public accountant or accountants shall be employed by the county delegation * * * to make a complete audit," etc.

We think that the term "certified public accountant" as here used means a certified public accountant under the laws of South Carolina. In employing the firm of Eaton, Saussy & Co., however, the delegation unquestionably employed such a certified public accountant of South Carolina in the person of H. S. Blanton, a member of that firm and the local manager of the firm's business in Spartanburg. Where a contract for auditing is made with a certified public accountant, we know of no provision of law which requires that all the work shall be personally performed or all the details entering into the audit shall be given personal attention by the certified public accountant contractually responsible therefor. There can be no doubt that under the fact in this case Lee and Driscoll, themselves registered as public accountants under the laws of Georgia, were clothed with such authority as could be delegated to them as agents

of their associate and partner, Blanton, who as a duly registered and certified public accountant of South Carolina was contractually responsible for this audit, for which both he and his associates had been employed. It does not appear that Lee and Driscoll were professionally incompetent or that their nonregistration as public accountants in this state jeopardized any private interest the treasurer was entitled to protect or any public interest he was in duty bound to safeguard. In the circumstances, we think there was substantial compliance with the requirements of the act in regard to the employment of a "certified public accountant," etc., for the purposes of the proposed audit, and that the county treasurer's refusal to permit the requested examination cannot be justified on the ground that Lee and Driscoll were not registered in South Carolina as certified public accountants.

Our conclusion is that the statute here under review imposes upon the respondent L. G. Miller, as county treasurer, the plain ministerial duty to permit such examination of his office by the accountants employed by the legislative delegation as will disclose the cash in hand; that is, the amount of money held by him in any capacity for which he is liable on his official bond. Any question of expendiency or policy involved in subjecting a public office to a special inquisition of this character has been conclusively resolved by the unequivocal legislative mandate of the supreme law-making power of the state. It follows that the petitioner is entitled to the relief sought.

It is accordingly ordered and adjudged that the writ of mandamus do issue as prayed.

Mandamus granted.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.