## 14616

### BRAMLETTE v. STRINGER *ET AL.*

#### (196 S. E., 257)

September, 1937.

*Messrs. Wilton H. Earle* and *Nathans & Sinkler,* for appellants,

*Messrs. J. Frank Epps* and *C. S. Bowen,* for respondent,

*Messrs. R. B. Hildebrand, Wm. Henry Hoyt* and *Robinson & Robinson* as *amici curiae* on behalf of Spartanburg and York Counties,

February 8, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

The respondent, as a resident and taxpayer of Greenville County, brought this action in his own behalf, and in behalf of others in a like situation, seeking to enjoin and restrain

the County Board of Commissioners of Greenville County, appellants, from issuing any bonds and borrowing any money from the United States under provisions of an Act of the General Assembly of South Carolina which was approved by the Governor on May 21, 1937.

The Act in question appears in the printed Acts of 1937, as Act No. 519, 40 St. at Large, p. 1078 *et seq.* This Act authorizes the Board of County Commissioners of Greenville County to issue and sell not exceeding $350,000.00 in serial bonds for road construction purposes, it being provided that: "The bonds may be sold and delivered in one lump sum, or may be sold in a lump sum and delivered in installments, * * * according to such instructions in writing with respect thereto, as may be filed with the County Board of Commissioners by the Legislative Delegation of Greenville County," etc.

The Act also provides that the Board of County Commissioners, in the name of Greenville County, are authorized and empowered to borrow from the United States Government, or any agency thereof, such sum or sums of money not exceeding $350,000.00, excluding interest thereon, the proceeds thereof to be used for any one or more of the purposes above mentioned, and to apply to the United States Government, or any agency thereof, for a grant or grants of such sum or sums of money as may be available and to receive the same and to use the same to supplement the funds herein authorized to be borrowed to assist in defraying the expenses of the aforesaid public improvements.

The purposes set forth in the said Act for which the moneys from the sale of the bonds and those to be derived from the loan are given in the first section of the Act, as follows: "For the purpose of providing funds to finance and/or assist in financing the construction and surface treatment or reconstruction and surface treatment and improvement of certain roads and bridges within Greenville County."

Another provision of the said Act is to the effect that

the designation of the roads to be constructed or improved shall be by the Greenville County Legislative Delegation.

The full faith, credit, and taxing power of the county are pledged to pay the bonds and the loan, and a tax authorized to be levied and collected to retire the indebtedness.

The Act was attacked as being in violation of the Constitution of 1895, in that Sections 1 and 2 of the Act make it discretionary with the Greenville County Legislative Delegation whether or not the full amount of bonds shall be sold; it being alleged that same is in violation of Article 1, Section 14, of the Constitution which provides that the three branches of State government shall be forever separate and distinct, and on the ground that the Act attempts to confer upon the Greenville County Legislative Delegation authority to select the roads to be constructed.

Motion was made before Judge Oxner for a temporary restraining order but the motion was refused.

The matter of the permanent injunction came on to be heard before Judge Stoll, who granted the same. This appeal is from the order of Judge Stoll granting the permanent injunction.

While the exceptions are five in number, the only questions presented are these: (1) Are the provisions of the Act leaving the matter of amount of bonds to be issued, and method of selling them, and leaving the designation of the roads to be constructed or approved to the discretion of the County Legislative Delegation unlawful delegations of power, contrary to the provisions of the Constitution; and (2) if such provisions are unconstitutional, are they separable from the remainder of said Act, so that if they are stricken down, will it destroy the whole Act, or will the remainder be a full, complete and effectual Act within itself, which will carry out the legislative intent?

To begin with, the constitutional questions involved here are to be differentiated from *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421; *Fooshe v. McDonald,* 82 S. C., 22, 63 S. E., 3; *Crawford v. Johnston,* 177 S. C., 399, 181 S. E.,

476; *State v. Moorer*, 152 S. C., 455, 150 S. E., 269; *State Ex Rel. Port Royal Mining Co. v. Hagood*, 30 S. C., 519, 9 S. E., 686, 3 L. R. A., 841; *Santee Mills v. Query*, 122 S. C., 158, 115 S. E., 202; *Little v. Willimon*, 103 S. C., 50, 87 S. E., 435; *Briggs v. Greenville County et al.*, 137 S. C., 288, 135 S. E., 153.

There can be no doubt but that the Legislature can create a commission to carry out a road building program, and authorize a bond issue by such commission to carry out the work, as was done in *Lillard v. Melton, supra;* or for a change in the form of county government, as in *Fooshe v. McDonald, supra;* or that bonds should not be issued until the Governor and State Treasurer, both executive officers, should determine certain matters, as in *Crawford v. Johnston, supra;* or that the Legislature can confer upon an executive body the discretion to adopt one or the other of two plans as in the case of *State v. Moorer et al., supra;* or of approving a mining license, as in *State ex rel. Port Royal Mining Co. v. Hagood, supra;* or the right to give the State Tax Commission, a purely executive body, the right to make rules and regulations concerning matters of taxation, as in *Santee Mills v. Query, supra;* and the case of *Little v. Willimon, supra,* is to be distinguished, for in that case while the county board was required to make reports to the Legislative Delegation, all matters of discretion relating to the administration of county affairs still remained in the County Commissioners, and the work of the delegation was merely supervisory. The case of *Briggs v. Greenville County et al., supra,* need not be considered, for in that case the provision of the Constitution as to the separation of the three branches of government was not invoked.

In the case at bar, the General Assembly has enacted a law authorizing Greenville County to issue not exceeding $350,000.00 in bonds, and to borrow not exceeding $350,000.00. In the Act the full discretion as to the amount of bonds to be issued, the amount of money to be borrowed, the roads to be constructed or improved with the funds,

are all left to the discretion of the County Legislative Delegation, which is not a purely executive body, but is wholly legislative.

Can a County Legislative Delegation, which undoubtedly belongs to the Legislative Department of Government, be appointed as an executive body to carry out and carry into effect laws passed by the Legislature? That is the question involved here.

The mandate of the Constitution is plain; the only difficulty is in the application to the facts. Section 14 of Article 1, of the Constitution, reads as follows: "In the government of this State the legislative, executive and judicial powers of the Government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

Before going further, it might be well to again say that the case of *Little v. Willimon, supra,* can be differentiated from the case at bar, for in that case, while the county board was to report to the delegation, it was left free to exercise its own judgment, and the Acts of the delegation were or could be treated as being merely supervisory.

There are only two cases in this State which the writer has been able to find which bear directly upon the constitutional questions here presented. *Spartanburg County v. Miller, County Treasurer,* 135 S. C., 348, 132 S. E., 673; and *Ruff v. Boulware,* 133 S. C., 420, 131 S. E., 29. And it will be necessary to review those decisions at some length. The *Miller case* was first decided though it appears in later reports.

In the *Miller case* the statute there under attack provided for an audit of offices and institutions of Spartanburg County and authorizing the Legislative Delegation of that county to select accountants, remove them for cause, fix their compensation, etc. In considering the question as to whether or not the Spartanburg Act was violative of Article 1, Section 14, of the Constitution, the Court among

other things, at page 356 of 135 S. C., 132 S. E., 673, 676, said: "It is contended that, in so far as this act authorizes or attempts to authorize and empower the legislative delegation of Spartanburg county to select and employ accountants, to remove them for cause, to fix by contract the compensation of such accountants, and to approve vouchers for their payment, it infringes the foregoing constitutional provision by conferring upon persons exercising the functions of the legislative department of government the duties and functions of the executive department. *The question presented is not free from difficulty. The members of the Legislature from Spartanburg county were elected for the purpose of making laws, not of administering them.* That as a general rule the Legislature of the state *may not, consistently with the constitutional requirement here involved, undertake both to pass laws and to execute them by setting its own members to the task of discharging such functions by virtue of their offices as legislators, would seem to be self-evident.* The principle, as we apprehend upon the correct application of which depends the solution of any such problem as to the exercise by the Legislature of nonlegislative functions, is that the Legislature *may properly engage in the discharge of such functions to the extent, and to the extent only, that their performance is reasonably incidental to the full and effective exercise of its legislative powers.* Thus it has been said: 'Administrative duties are frequently required to be performed in order to give full operation to and to make effective the respective powers of the Legislature and judiciary as well as the executive.' 6 R. C. L., 150, § 149.

"See *Stockman v. Leddy,* 55 Colo., 24, 129 P., 220, and note, Ann. Cas., 1916-B, 1055.

"Applying that principle, in the light of the fundamental rule that it is the duty of the judiciary to uphold the constitutionality of a statute unless its invalidity is manifest beyond a reasonable doubt (*State v. Hammond,* 66 S. C., 219, 44 S. E., 797; *Battle v. Willcox,* 128 S. C., 500, 122

S. E., [516] 517), we cannot hold that the statute here in question is so clearly violative of the privisions of section 14, art. 1, of the Constitution, as to require that it be stricken down. It is the duty of the Legislature, unquestionably, so to legislate as to provide an adequate and efficient system of county government. In order properly to discharge that duty, conceivably it may become necessary or desirable from time to time to conduct investigations and to obtain information as to the condition of regularly constituted administrative offices, and to ascertain the manner in which the duties of the executive department of the government are being discharged. As was said by this Court in *Ex Parte Parker*, 74 S. C., 466, 55 S. E., 122, 114 Am. St. Rep., 1011, 7 Ann. Cas., 874:

" 'The power of the General Assembly to obtain information on any subject upon which it has power to legislate, with a view to its enlightenment and guidance, is so obviously essential to the performance of legislative functions that it has always been exercised without question.' * * *

"In the case at bar, it is fair to assume that the purpose, or certainly one of the purposes, of the 'complete and comprehensive audit of county offices, etc., authorized by this act, was to obtain information needed by the General Assembly in the exercise of its strictly legislative functions and duties.' If so, in so far as administrative duties are imposed by this act upon members of the Legislature, the discharge of such executive functions may properly be regarded as incidental to and comprehended within the scope of their legislative duties. If, for example, duties of the character here imposed upon the Spartanburg delegation had been imposed upon a legislative committee appointed to investigate the affairs of the state penitentiary, it would scarcely be contended that, in committing such functions to its own members, the Legislature had transcended the bounds of its constitutional authority. That the condition of the offices and institutions of Spartanburg county are as legitimate a subject of legislative inquiry and action as the

state penitentiary is not open to dispute. In that view, and for the reasons indicated, the objection based upon section 14, art. 1, of the Constitution, must be overruled." (Italics added.)

The writer of this opinion has quoted at length from the case of *Spartanburg County v. Miller, supra,* for the reason that it was almost on the border line, and while the decision was unanimous, the Court itself admitted that the question involved there was not free from difficulty. The Act was upheld on the ground unquestionably that one of the purposes of the Act was to obtain information needed by the General Assembly; that the duties involved upon the delegation of employing accountants, discharging them for cause, fixing their salary, etc., while executive functions they might properly be regarded as incidental to and comprehended within the scope of the legislative duties of the Spartanburg County Delegation.

In *Ruff v. Boulware,* 133 S. C., 420, 131 S. E., 29, an Act of Fairfield County provided for the establishing of a chaingang for said county, under the direction of a superintendent elected by the Board of Commissioners and the County Supervisor, with the approval of the Legislative Delegation; that guards should also be elected by the county board and the supervisor, with the approval of the Legislative Delegation; that all equipment, supplies, etc., purchased by the superintendent should be purchased only by and with the consent and approval of the County Legislative Delegation and the County Board of Commissioners.

The Act was attacked on various constitutional grounds, among which were that it was violative of Section 14, Article 1, in that "it attempts to combine and mingle legislative, executive and ministerial duties," and to make the members of the Legislative Delegation executive "officers of the County of Fairfield."

The Court, in disposing of the contention, at page 429 of 133 S. C., 131 S. E., 29, 31, among other things, says: "In the case at bar, the conclusion that the legislative dele-

gation could legitimately exercise the power, conferred by this Act, of appointing, or controlling the appointment of, the chaingang superintendent and guards, we think is required by our decisions in *Elledge v. Wharton*, [89 S. C., 113, 71 S. E., 657] *supra, State v. Bowden* [92 S. C., 393, 75 S. E., 866] *supra,* and *Spartanburg [County] v. Miller, supra.* If so, the delegation could as legitimately exercise the power, expressly granted, of removal or dismissal. See *Spartanburg [County] v. Miller, supra, and State v. Rhame*, 92 S. C., [455] 465, 75 S. E., 881 [Ann. Cas., 1914-B, 519]. But, under the principle announced and applied in the case of *Spartanburg· [County] v. Miller, supra,* 'that the Legislature may properly engage in the discharge of such functions (executive or administrative) *to the extent, and to the extent only,* that their performance is reasonably incidental to the full and effective discharge of its legislative powers,' *the propriety of the performance by the Legislature (through the Fairfield Delegation, acting by virtue of their legislative office) of the duty and function of consenting to and approving the purchase of supplies by the superintendent of a county chain gang, is, at best, doubtful. In the view, however, that such provision of the act is susceptible of the construction that it was intended merely to confer a supervisory authority and to impose a supervisory duty (Little v. Willimon, supra), in connection with the establishment of an agency of County Government, as to which the power of the General Assembly to 'make special provision' is plenary* (section 11, art. 7 of the Constitution: *State v. Touchberry,* 121 S. C., 5, 113 S. E., [345] 346, 347), we are of *the opinion that the invalidity of the act as an infringement of section 14, art. 1, of the Constitution cannot soundly be* question is so clearly violative of the provisions of section *held to be* 'manifest beyond a reasonable doubt' (*Poulnot* appellants' exceptions, directed to that contention, must be overruled." (Italics added.)

In the *Ruff v. Boulware case, supra,* the Act provided that the purchase of supplies was to be approved by the

Legislative Delegation *and* the County Board of Commissioners, and the Court, from this, in all probability, inferred that the duties of the Legislative Delegation were merely supervisory.

Certainly this case is not bottomed on the principles announced in *Spartanburg County v. Miller, supra,* for there it was expressly stated that the General Assembly probably needed information about the respective offices in Spartanburg County, and had appointed the Spartanburg Legislative Delegation as its committee to obtain the information by employing auditors, etc., and that the duties of the Spartanburg Delegation, *in that case, were incidental to their duties as members of the Legislature.*

The case of *Ruff v. Boulware, supra,* in our opinion, goes too far. There can be no escape from the conclusion that when the Fairfield County Legislative Delegation approved the purchase of supplies for the chaingang, it was, to our minds, executing purely executive duties, which were in no way incidental to their duties as members of the Legislature.

In the case at bar, the Greenville County Act attempts to go further than the Acts involved in the *Spartanburg County v. Miller,* and *Ruff v. Boulware cases,* in that here the amount of the bonds to be issued, the method of issuance, the amount of money to be borrowed, and the roads upon which the funds are to be expended, *are matters wholly within the discretion of the Greenville County Legislative Delegation.* The County Commissioners, the officers provided by law to administer the executive affairs of the county, have no say so whatsoever.

Here the General Assembly is seeking no necessary information, and none of the duties involved by this Act upon the Legislative Delegation are of a supervisory nature, or are incidental to their duties as members of the Legislature, but on the other hand are fully discretionary acts, relating exclusively to the executive functions in the government of Greenville County, and in our opinion such parts of the Acts as attempt to give the delegation the

discretion to say what amount of bonds should be issued, how they should be issued, and what roads should be constructed or improved by the proceeds of the bonds and the loan, are clear violations of Article 1, Section 14 of the Constitution, and are therefore null and void.

We are also of the opinion that the case of *Ruff v. Boulware, supra,* in so far as the same may conflict with this opinion, should be overruled.

This Greenville County Act, here involved, provides among other things that if any portion of the Act should be held invalid for any reason by a Court of competent jurisdiction, such holding shall not affect, impair, or invalidate the remaining portions of said Act, etc.

While the Court will always, where possible, give effect to the legislative intent, the rule is clear that if parts of an Act are declared unconstitutional, and those parts so stricken are inseparable from the remainder of the Act, and when stricken, the remainder is not a full, complete, and effectual Act within itself, and fails to carry out the legislative intent, then the whole Act must fall.

It is a serious and solemn duty for the Court to declare an Act of the Legislature unconstitutional, but where the unconstitutionality appears beyond a reasonable doubt, there is no other recourse.

When the portions of this Act hereinabove held to be unconstitutional and void are stricken from the Act, the remainder is inseparable, and does not constitute a full, complete, and effectual Act, nor carry out the legislative intent. For these reasons, the entire Act must fall.

Counsel who submitted a brief as *amici curiae* on behalf of Spartanburg and York Counties express apprehension as to the effect of a decision by this Court, upon various Acts of other counties of the State relating to bond issues. The questions raised here were not raised in those cases, and in those cases bonds have been sold and rights vested, but this decision can in no way affect

the validity of the bonds in the various Acts set forth by counsel in their brief.

It is therefore the judgment of this Court that the Act relating to Greenville County, Acts of 1937, page 1078, etc., involved here, be and the same is hereby declared to be unconstitutional, null, and void, and the order of Circuit Judge Stoll granting a permanent injunction against the issuance of bonds thereunder is hereby affirmed, and made the judgment of this Court.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.