## 15366

TOWN OF BELTON v. AMERICAN EMPLOYERS INS. CO. OF BOSTON, MASS.

SAME v. GLENS FALLS INDEMNITY CO. OF NEW YORK

(18 S. E. (2d), 612)

June, 1941.

*Mr. J. M. Nickles,* of Abbeville, for appellant American Employers Insurance Company,

*Messrs. Watkins & Prince,* of Anderson, for appellant,

*Mr. Leon L. Rice,* of Anderson, for respondent,

February 3, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

Dr. R. L. Parker, deceased, was city clerk and treasurer of the Town of Belton from 1930 until March 15, 1939. The appellant, American Employers Insurance Company, was surety on the bond of the clerk and treasurer for the years 1930-1934, inclusive; and the appellant, Glens Falls Indemnity Company, was surety on his bond for the years 1935-1939, inclusive.

These actions were brought separately by the Town of Belton against the sureties on the bonds of the clerk and treasurer, the complaint in each case alleging that an audit of the books kept by him showed that the town had lost revenue due to his failure to well and truly perform the duties of his office, as required by the ordinances of the town and the laws of the State. Judgment was prayed against each surety for losses accruing during the periods covered by the respective bonds. By consent the cases were heard together, and, after they were referred to a special Referee to take and report the testimony, resulted in a judgment of the Circuit Court in favor of the plaintiff against American Employers Insurance Company for $795.37, and against Glens Falls Indemnity Company for $1,645.59. From these judgments this appeal is taken.

The appellants contend that there can be no recovery under the pleadings in this case, because the plaintiff failed to offer testimony of some ordinance of the town prescribing and defining the functions and duties imposed by law upon the

office of the clerk and treasurer. Before passing upon this question a recital of some of the evidence should be given.

The loss of revenue suffered by the Town of Belton was shown by the audit to have resulted from the alleged negligent failure of the clerk and treasurer to collect from water subscribers each month the proper amounts charged against them, and his failure to collect from certain businesses the full amount of license fees required. A bill of particulars, the items of which were summarized from the audit made by a certified public accountant, was served upon the defendants prior to the taking of the testimony, and was later introduced in evidence. The total alleged loss in revenue to the Town of Belton is thus shown therefrom:

"1930    Paving Assessment L. D. Blake in dispute $    197.96
"1931    License taxes erroneously billed ........    100.00
"1932    License taxes erroneously billed ........    100.00
"1933    License taxes erroneously billed ........    112.50
           Erroneous water billings ..............    131.02
"1934    License taxes erroneously billed ........    100.00
           Erroneous water billings ..............    131.02

                                                   $  993.33
"1935    License taxes erroneously billed ........    100.00
           Erroneous water billings ..............    179.05
"1936    License taxes erroneously billed ........    200.00
           Erroneous water billings ..............    117.66
"1937    License taxes erroneously billed ........    210.40
           Erroneous water billings ..............    164.44
           Overpayment salary water supt. ........     56.25
           Fines uncollected ....................     80.50
           Errors in water receipts ..............     15.25
           Errors in tax receipts ...............     18.00
"1938    License taxes erroneously billed ........    150.00
           Erroneous water billings ..............    222.04
           Overpayment salary water supt. ........     93.75
           Fines uncollected ....................    200.00

| | |
|---|---|
| Errors in water receipts ............. | 1.20 |
| Rent unaccounted for ............... | 12.50 |

"1939 (January 1st through March 15th):

| | |
|---|---|
| Erroneous water billings ............. | 15.75 |
| Rent unaccounted for ............... | 12.50 |
| Errors in water receipts Allowance for overage in cash .....$ 9.65 | |
| Net shortage ................ 19.90 | |

$1,840.94

One or more of the foregoing items was disallowed by the Circuit Court, but as to these items no appeal has been taken by the Town of Belton.

The appellants took the same position before the Circuit Court that they now take, that is, that there was no testimony fixing and determining the duties of the clerk and treasurer, and for that reason the actions for the breach of the bond should fail. On this question the Circuit Judge held:

"I am of the opinion that upon executing the bonds the defendants and their principal should be held to the faithful performance of such duties as were within the reasonable contemplation of the parties, that is, such duties as are usually incident to and within the scope of the duties of said office, such as collection of water bills, license fees, etc. Otherwise, in respect to the matters complained of, the town would have been without protection and the surety permitted to collect its premiums from year to year without incurring any responsibility at all."

But appellants submit that the error in this holding lies in the fact that the plaintiff offered no testimony of any duties which were within the reasonable contemplation of the parties, or such duties as are usually incident to and within the scope of the duties of the clerk and treasurer; that, in effect, the Court took judicial notice of the functions of such office. We think that the evidence fully supports the lower Court.

While it appears that no ordinance of the Town of Belton was formally introduced in evidence, we think the record amply shows, without objection, the duties which were required of the clerk and treasurer, the violation of which constituted the basis of the actions. Mr. J. F. Burgess, the mayor *pro tem*, of the Town of Belton, testified that when the audit was proceeding, he met with the town council at the home of Dr. Parker, the clerk and treasurer, and that Dr. Parker made the admission, not only once but several times, that he had been woefully negligent in his collection of water rentals, taxes, and licenses. It appears from the cross examination of this witness that the clerk and treasurer customarily read his report of collections and disbursements at the monthly council meetings, and likewise that he submitted to council an annual report of receipts and disbursements.

The testimony of Mr. H. B. Croxton, the certified public accountant who made the audit of the books of the clerk and treasurer, throws light upon the question concerning the duties of the clerk and treasurer. In his testimony he states that the books and records from which he made the audit were in the town hall; they were marked with the words "Town of Belton," and were turned over to him by Dr. Parker, who was present when the audit was commenced; that Dr. Parker helped him to get started, and that the audit was made up from the records and entries in these books. Mr. Croxton further testified:

"I heard Dr. Parker make a statement about the records and how he kept them. When I first started checking the water books, I asked Dr. Parker a few questions in order to get on the right track; how he billed the people, how the meters were read; how they were recorded after payment was made; what kind of receipt was given the consumers; and a lot of questions were asked in the course of the audit; and his reply to me was, 'I don't see how you are going to check these records at all, because I have got them so messed up you cannot tell heads or tails of them.' "

The license tax ordinance was not introduced, but we think under the evidence there is no merit in the position taken by appellants that there was not testimony fixing and determining the duties of the clerk and treasurer. All of the books kept by him, and which it was manifestly his duty to keep, were turned over by him personally to the auditor; and it clearly appears from those books and the entries therein, and by his admissions, what his duties were, such as the collection of water bills, license fees, etc. It is further shown by the testimony brought out by the appellants, that the clerk and treasurer submitted to the town council a monthly report and an annual report of his collections and disbursements. No one will deny that the collection and disbursement of money are duties pertaining to the office of a clerk and treasurer.

It is argued that the lower Court erred in holding that the appellants as sureties could not question the validity of the license ordinance. In this the Court was entirely correct.

This Court, in the very recent case of *Greenville County Fair Ass'n, Inc. v. Christenberry,* 198 S. C., 338, 17 S. E. (2d), 857, 858, filed December 8, 1941, had occasion to pass upon this question. In the foregoing case the following principle of law from 16 C. J. S., Constitutional Law, § 82, page 173, was quoted with approval:

"As a general rule a public official whose rights are not adversely and injuriously affected by the operation of a statute or ordinance, or the particular feature of it complained of, may not raise the question of its constitutionality. Ordinarily, the mere interest of a public official, as such, is not sufficient to entitle him to question the validity of a statute; but, to entitle him to raise such question, he must show that his rights of person or property are adversely affected by the operation of the statute."

Many cases from the Court uphold the same rule. *Walpole v. Wall,* 153 S. C., 106, 149 S. E., 760; *Spartanburg County v. Miller,* 135 S. C., 348, 132 S. E., 673; *Ex parte Florence School,* 43 S. C., 11, 20 S. E., 794; *State ex rel. Fooshe v. Burley,* 80 S. C., 127, 61 S. E., 255, 16 L. R. A., (N. S.), 266. To the same effect see 11 Am. Jur., 762, and annotation 30 A. L. R., 378, 129 A. L. R., 941.

It is clear that the duties of the clerk and treasurer were merely ministerial, and did not entitle him to question the validity of the ordinance. Nor can the appellants question it.

We are told that the Court erred in holding that the plaintiff was entitled to recover for the alleged erroneous water billing, upon the ground that there is no testimony in the record as to the rates at which the water should have been billed to the individual consumer. At least two instances were testified to as typical of losses suffered by the town because of the failure of the clerk and treasurer to collect the full amount due for water rental. In these two instances the clerk admitted that the water bills were reduced one-half by him in order to eliminate wrangling and disputes; and that in so doing he followed the course of least resistance. But aside from this, the books themselves were the best evidence and were in evidence, and the auditor, Mr. Croxton, undertook to show the original entries item by item. It will also be recalled that the clerk and treasurer himself told Mr. Croxton in what manner he billed the people, how the meters were read, how they were recorded after payment was made, etc.

It is also contended that the books of the Town of Belton for the years 1934 and 1937, showing the records of water meter readings, were not in evidence, and that the Court erred in holding that they were in evidence. There is no merit in the exceptions raising this issue. When the hearing before the special Referee was about to close, counsel for the plaintiff announced that he would

introduce in evidence at the next reference the water books for 1934 and 1937. Counsel for appellants stated that they would offer no evidence, and contended then that the plaintiff had closed its case; that the reference was over, and no further evidence should be admitted. Counsel for the plaintiff countered with the statement: "I want to put those things in, and we won't close it until we do. I just want you to have everything here"; whereupon counsel (Mr. Watkins) for one of the defendants, said: "I do not care whether you bring anything." The books for the years 1934 and 1937 were brought into the Court House along with all of the other books which had been introduced in evidence, and they were before the Circuit Judge, and he ruled that these two record books were properly in evidence. There can be no question about the correctness of this holding. It is clear that the reference had not closed. But even if it had, and counsel wished an opportunity of further examination, no motion was made to reopen the reference for this purpose. No prejudice has been shown. It will be borne in mind, too, that while the original entries in the record books in question constitute the best evidence of their contents, the complete audit of these books had already been introduced in evidence without objection.

It is suggested that the plaintiff is estopped to recover license fees which the clerk and treasurer negligently failed to collect because he read to the council at its monthly meetings a statement of his receipts and disbursements, and that no member of council raised any objection thereto, but confirmed the report as read. These reports, as shown by the evidence, were not itemized. They showed only the sum total of amounts collected and disbursed. But in any event, the supervision of town council over the duties of the clerk and treasurer was in no sense or degree on behalf of the sureties on the bonds of such officer. Their contract is that the officer will perform his

duties faithfully and properly, and for any failure to do so they become liable.

The law does not contemplate that the actions of the officer in the performance of his duty shall be scrutinized for the benefit of the sureties; it is no part of the contract with the sureties that this shall be done. And where reports and settlements are required it does not change the obligation of the sureties or enter into their contracts. If it were shown that the town council was negligent in this respect, it would be no available defense to sureties on the clerk and treasurer's bond in an action to recover money which the treasurer had failed to collect through failure to properly perform his duties.

The Court takes pleasure in closing this opinion with the following quotation from the Circuit Decree: "Let it be recorded that the record fails to establish any defalcation or misappropriation of funds on the part of the former clerk and treasurer; in fact, no such claim is made in the proceedings."

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE E. H. HENDERSON concur.