558 S.E.2d 511

John M. KNOTTS, Jr., House of Representatives, District 88, in his official capacity as Chairman of the Lexington County Legislative Delegation and the Lexington County Legislative Delegation, Respondents,

v.

S.C. DEPARTMENT OF NATURAL RESOURCES, and Dr. Paul A. Sandifer, in his official capacity as Executive Director of the S.C. Department of Natural Resources, Appellants.

No. 25395.

Supreme Court of South Carolina.

Heard Nov. 14, 2001.

Decided Jan. 7, 2002.

4

Chief Counsel Buford S. Mabry, Jr., Deputy Chief Counsel Paul S. League and Assistant Chief Counsel James A. Quinn, all of South Carolina Department of Natural Resources, of Columbia, for appellants.

Heath P. Taylor, of Wilson, Moore, Taylor & Thomas, P.A., of West Columbia, for respondents.

PER CURIAM.

Representative John M. Knotts, Jr., in his official capacity as Chairman of the Lexington County Legislative Delegation, along with the Lexington County Legislative Delegation (collectively "Delegation") sued the South Carolina Department of Natural Resources and Dr. Paul A. Sandifer in his official capacity as Executive Director of the Department of Natural Resources (collectively "D.N.R.") over allocating money from the Water Recreational Resources Fund ("W.R.R.F."). The trial court issued a writ of mandamus ordering D.N.R. to process Delegation's funding approval. For reasons set forth below we reverse the trial court's decision and vacate the writ of mandamus.

## BACKGROUND

The facts of this case are undisputed. The statute at the center of this case provides, in part, all W.R.R.F. funds: "must be allocated based upon the number of boats or other watercraft registered in each county pursuant to law and expended, **subject to the approval of a majority of the county legislative delegation, including a majority of the resident senators, if any,** for purpose of water recreational resources." S.C.Code Ann. § 12–28–2730(a) (2000) (emphasis added).

The State funds the W.R.R.F. with a percentage of the gasoline tax revenue which is then disbursed to counties based on the number of watercraft registered in each. S.C.Code Ann. § 12–28–2730 (Supp.2000). The State treasury holds the funds in a "Special Revenue Account" administered by D.N.R.

In July 2001, Delegation forwarded its approval to D.N.R. to disperse W.R.R.F. funds to constituent organizations. D.N.R. acknowledged receipt of the approved request. However, D.N.R. informed Delegation it would not process the request until it ascertained what W.R.R.F. funds the department would use to comply with provisos in the 2001–2002 Appropriations Act. *See* 2001 Act 66.

Provisos 72.110 and 72.111 direct D.N.R. to transfer money from various special funds, including the W.R.R.F., to the general fund.[1] The Act also authorizes D.N.R. to reduce its own budget reduction by transferring money from the special funds to its departmental budget. *See* 2001 Act 66 § 72.76.[2]

## ISSUES

Does D.N.R. have discretion to administer the W.R.R.F. under S.C.Code Ann. § 12–28–2730 (Supp.2000)?

Does the 2001–2002 Appropriations Act give D.N.R. discretion to allocate W.R.R.F. funds?

Does S.C.Code Ann. § 12–28–2730 (Supp.2000) violate S.C. Const. art. I, § 8?

If so, are the unconstitutional provisions severable?

## DISCUSSION

■ A writ of mandamus is the highest judicial writ and is coercive in nature. *Ex parte Littlefield,* 343 S.C. 212, 540

---

1. The Appropriations Act directed D.N.R. to transfer $1 million from "03 Earmarked Funds" and $2,042,243 from "Special Revenue Funds" to the general fund. 2001 Act 66 §§ 72.110–72.111. The W.R.R.F. is classified as an "03 Earmarked Fund" and a "Special Revenue Fund."

2. Budget proviso 72.76 provides: "agencies are authorized for FY 2001–02 to spend from agency earmarked accounts designated as 'special revenue funds'... an amount equal to the general fund base reduction for FY 2001–02, to maintain critical programs previously funded with general fund appropriations." 2001 Act 66 § 72.76.

S.E.2d 81 (2000). Delegation may obtain the writ after showing: (1) D.N.R. has a duty to perform the act; (2) the ministerial nature of the act; (3) Delegation has specific legal right for which discharge of the duty is necessary; and (4) a lack of any other legal remedy. *Porter v. Jedziniak,* 334 S.C. 16, 512 S.E.2d 497 (1999).

Much of Delegation's and D.N.R.'s arguments center on the ministerial nature of disbursing W.R.R.F. funds. Assuming arguendo that disbursement is a ministerial act, a writ of mandamus is improper because D.N.R.'s duty to perform is predicated on an unconstitutional statute. Because we find S.C.Code Ann. § 12–28–2730 is facially unconstitutional we do not address the other issues.

## I

D.N.R. asserts S.C.Code Ann. § 12–28–2730 violates S.C. Const. art. I, § 8. This Court is reluctant to find a statute unconstitutional. Every presumption is made in favor of a statute's constitutionality. *Gold v. South Carolina Bd. of Chiropractic Exam'rs,* 271 S.C. 74, 245 S.E.2d 117 (1978). A "legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Joytime Distribs. and Amusement Co., Inc. v. State,* 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999), *cert. denied* 529 U.S. 1087, 120 S.Ct. 1719, 146 L.Ed.2d 641 (2000).

D.N.R. bears the burden of proving the statute unconstitutional. *Home Health Serv., Inc. v. South Carolina Tax Comm'n,* 312 S.C. 324, 440 S.E.2d 375 (1994). To carry this burden D.N.R. cites the following cases: *Tucker v. South Carolina Dep't of Highways & Pub. Transp.,* 309 S.C. 395, 424 S.E.2d 468 (1992) (*Tucker* I); *Gunter v. Blanton,* 259 S.C. 436, 192 S.E.2d 473 (1972); *Bramlette v. Stringer,* 186 S.C. 134, 195 S.E. 257 (1938).

This Court in *Bramlette v. Stringer, supra,* found unconstitutional a statute authorizing a bond issue to improve a county's roads. The statute impermissibly delegated a variety of powers to the county legislative delegation, including the ability to determine the amount of the bonds issued, the process for issuing the bonds, and which roads to improve.

This Court began its analysis by noting an act is presumed complete after leaving the hands of the Legislature. The *Bramlette* statute failed because it created the framework of a law whose interior would be finished by a legislative delegation assuming executive duties. We grounded the *Bramlette* holding in the basic concept of separation of powers that a legislative body cannot reserve for itself powers given solely to the executive branch.

Delegation attempts to distinguish *Bramlette* from the present case by focusing on who ultimately spends the funds. Delegation insists the *Bramlette* statute wrongfully gave the legislative delegation broad powers to expend the funds while S.C.Code Ann. § 12–28–2730 allows Delegation to merely approve requests leaving to the parties receiving the funds the unfettered discretion in spending the appropriation. We disagree with this interpretation of *Bramlette*.

■ Separation of powers is not predicated on differentiating between who actually spends the money, but on whether the legislative branch assumes powers belonging to another branch of government. Once the legislature enacts a law all that remains is the efficient enforcement and execution of that law. *Bramlette*, 186 S.C. at 134, 195 S.E. at 258. Regardless of who spends the money, § 12–28–2730 is unconstitutional because a legislative delegation may not execute or enforce a law.

This Court in *Gunter v. Blanton, supra,* found a statute unconstitutionally allowed a school board to adopt tax increases only with the approval of its county legislative delegation. We held the Legislature could delegate its taxing power to the school board, but it could not tie that power to the legislative delegation's approval. We ruled the statute could not "authorize the members of the delegation to participate in this determination as legislators, for they may exercise legislative power only as members of the General Assembly." *Id.,* 259 S.C. at 441, 192 S.E.2d at 475. The statute impermissibly empowered a legislative delegation to effectively veto a tax increase with which it disagreed. *See also Aiken County Bd. of Educ. v. Knotts,* 274 S.C. 144, 262 S.E.2d 14 (1980) (This Court adopted the *Gunter* analysis to find a similar statute unconstitutional).

Delegation distinguishes *Gunter* because it did not address a legislative delegation's power to approve expenditures. The *Gunter* rationale prohibits the Legislature from undertaking "to both pass laws and execute them by setting its own members to the task of discharging such functions by virtue of their office as legislators." *Aiken County Bd. of Educ. v. Knotts,* 274 S.C. at 149–50, 262 S.E.2d at 17.

Contrary to Delegation's assertions the rationale underlying *Gunter* and *Aiken* undermines the constitutionality of S.C.Code Ann. § 12–28–2730. The statute clearly permits the Legislature to execute a law it has passed by empowering its own members to administer the law by virtue of their office as legislators. *See Gunter v. Blanton,* 259 S.C. at 441, 192 S.E.2d at 475; *see also, Aiken County Bd. of Educ. v. Knotts,* 274 S.C. at 149–50, 262 S.E.2d at 17.

Delegation argues its approval under § 12–28–2730 is merely incidental to the Legislature's appropriation authority. *See Aiken County Bd. of Educ. v. Knotts,* 274 S.C. 144, 262 S.E.2d at 17 (A Legislature may "engage in the discharge of such functions to the extent only that their performance is reasonably incidental to the full and effective exercise of its legislative powers."). We disagree because Delegation's interpretation undermines the doctrine of separation of powers.

 The Legislature has the power to delineate how an executive department may fund a request under the W.R.R.F. The Legislature may statutorily outline how D.N.R. must expend money from W.R.R.F. by clarifying the term "water recreational purposes." The Legislature may allow legislative delegations to make suggestions on how to spend W.R.R.F. funds. *See Tucker v. South Carolina Dep't of Highways and Pub. Transp.,* 314 S.C. 131, 442 S.E.2d 171 (1994) (*Tucker* II). However, the Legislature does not have the power to create a law then execute it. The power to execute a law is not incidental to the power to appropriate, but is a separate executive power.

In *Tucker* I, *supra,* this Court held a legislative delegation could not approve highway fund expenditures or enter into contracts for highway improvements on behalf of the county. We adopted the *Gunter* and *Aiken* rationale that separation of powers mandates the Legislature "may not undertake both to

pass laws and to execute them by bestowing upon its own members functions that belong to other branches of government." *Tucker I*, 309 S.C. at 396, 424 S.E.2d at 469.

 S.C.Code Ann. § 12–28–2730 unconstitutionally usurps executive powers for the benefit of legislative delegations.[3] The Legislature is constitutionally forbidden from undertaking to pass laws and then to execute them by bestowing upon its own members powers belonging to the executive branch.

## II

 Having found the statute unconstitutional we now turn our attention to whether the statute may survive after severing the unconstitutional requirement of legislative delegation approval. We recognize the principle that a statute may be constitutionally valid in part while unconstitutionally invalid in part. *Aiken County Bd. of Educ. v. Knotts, supra; Dean v. Timmerman, supra.*, 234 S.C. 35, 106 S.E.2d 665 (1959) *Townsend v. Richland County,* 190 S.C. 270, 280–81, 2 S.E.2d 777, 781 (1939) sets forth the criteria for applying this principle:

> where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other, so as to warrant the belief that the Legislature intended them as a whole, and if they cannot be carried into

---

3. Delegation asserts all cases cited by D.N.R. have a common thread of dealing with delegations imposing their will on executive bodies operating under a statutory grant of authority. Delegation believes S.C.Code Ann. § 12–28–2730 does not give D.N.R. a role in administering the W.R.R.F., but does give legislative delegations a supervisory role in its administration. Based on this silence, Delegation argued in brief and oral argument that D.N.R. has no executive authority with regard to the W.R.R.F. and therefore, no infringement upon the executive branch has occurred.

Delegation confuses the holdings in the *Bramlette* line of cases and the theory behind the separation of powers doctrine. The fact the Legislature is infringing upon a particular executive body's authority is irrelevant to whether the Legislature improperly assumes executive branch powers. This Court has continually held the legislative branch may not reserve for itself the function of executing a law. *See Tucker v. South Carolina Dep't of Highways & Pub. Transp.* (*Tucker* I) *supra; Aiken County Bd. of Educ. v. Knotts, supra; Gunter v. Blanton, supra; Bramlette v. Stringer, supra.*

effect, the Legislature would not have passed the residue independently of that which is void, the whole act is void. On the other hand, where a part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such a character as that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder. (Citations omitted).

 D.N.R. contends the purpose of the W.R.R.F. is to benefit the boating public. It argues this purpose can be served by severing the unconstitutional clause and leaving the rest of the W.R.R.F. intact. D.N.R. believes it can administer the program. We disagree.

Unlike the *Bramlette* line of cases, § 12–28–2730 does not grant any entity, other than legislative delegations, the power to direct spending from the fund. Removing the unconstitutional legislative delegation clause leaves the program without a body to direct expenditures. D.N.R. desires this Court read into the statute a legislative intent to give D.N.R. that power. We decline to do so.

 The cardinal rule of statutory construction is for a court to ascertain the intent of the legislature and to give it effect. *Charleston County Sch. Dist. v. State Budget and Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992). If a statute's language is plain, unambiguous, and conveys a clear meaning "the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). This plain meaning rule ensures a court will not change the meaning of an unambiguous statute. *Id.*

The plain language of § 12–28–2730 evidences the Legislature's intent to affix its own county delegations as the sole authority to direct disbursement of W.R.R.F. funds. The statute does not meet the *Townsend* criteria for severability and must fail in its entirety.

While we conclude S.C.Code Ann. § 12–28–2730 is unconstitutional in its entirety we do not forbid D.N.R. from fulfilling its proviso obligations under the recent Appropriations Act. *See* 2001 Act 66 §§ 72.76, 72.110 and 72.111. The Legislature clearly intended to give D.N.R. discretion in using W.R.R.F. funds to comply with proviso obligations regardless of the constitutionality of the administration of the W.R.R.F.

We REVERSE.

JEAN H. TOAL, C.J., JAMES E. MOORE, JOHN H. WALLER, JR., E.C. BURNETT, III and COSTA M. PLEICONES, JJ., concur.