## 20492

John E. SIMKINS, Appellant, v. CITY OF SPARTANBURG, Respondent.

(237 S. E. (2d) 69)

*James C. Cothran, Jr., of Johnson, Smith, Hibbard &* *Cothran,* Spartanburg, *for Appellant,*

244

*T. Emmett Walsh, of Gaines & Walsh,* Spartanburg, *for Respondent,*

August 16, 1977.

Lewis, Chief Judge:

Appellant seeks in this action to recover from the City of Spartanburg a portion of his property taxes for the fiscal year 1975-76, which he paid under protest. He bases his right to recover upon allegations that the City illegally set its tax levy for the 1975-76 fiscal year in violation of Article 3, Section 29 of the South Carolina Constitution.

The complaint also alleges that the action is brought by appellant individually and as a representative of all other citizens and taxpayers in the City, who paid their taxes under protest for the year 1975.

The respondent City challenged appellant's right to bring the class action and denied that the tax levy in question was

illegally assessed. The lower court sustained both positions of the City and this appeal followed. Since we agree that the tax for the year 1975-76 was legally assessed, it is unnecessary to determine whether appellant could maintain the action for the benefit of the alleged class.

The following, as modified, from the order of the lower court correctly disposes of the remaining issue and is adopted as the judgment of the court:

The complaint alleges that the City of Spartanburg set its tax levy for the 1975-1976 fiscal year before the total value of all assessed property subject to tax was known and that this action of the City Council violated the South Carolina Constitution. Defendant denies that any of these actions violated the South Carolina Constitution and alleges that the levy was fixed in accordance with law and after careful study of all estimated revenues and expenditures.

The facts in this case are not greatly in dispute. A hearing was held on May 5, 1976 and certain stipulated facts were presented to the Court. The stipulations and testimony show that on July 7, 1975, the City Council of the City of Spartanburg ratified its tax ordinance for the 1975-1976 fiscal year following public advertisement as required by State law. The tax ordinance set a rate of 144 mills or $14.44 per $100.00 of assessed value on all property subject to tax in the City of Spartanburg. This is the same tax rate as used in the previous year.

The stipulations and testimony show that for the 1974 tax year the total value of all assessed property in the City of Spartanburg was $22,376,095.00. As of December 10, 1975, the records of the Spartanburg County Auditor show that the total value of all assessed property in the City of Spartanburg was $26,671,323.00. The increasee in the total value of the assessed property is due to the fact that, during the year 1974, the Spartanburg County Assessor conducted a reappraisal program in which all property in the County of

Spartanburg was appraised at fair market value. The assessed value of all property in the City of Spartanburg is composed of three components: real property assessed by the Spartanburg County Board of Assessors, personal property assessed by the Spartanburg County Auditor's Office, and corporate property assessed by the South Carolina Tax Commission.

The testimony shows that on or about June 6, 1975, the Spartanburg County Assessor and the Spartanburg County Auditor met with various City Officials and gave their estimates of the total value of all assesed property in the City of Spartanburg. Mrs. Helen Vise, the County Auditor, testified that the exact figures on the value of corporate property in the City of Spartanburg were not available until August, 1975. However, she testified that, on June 6, she was able to give the City Officials an estimate of the total value of all appraised property in the City of Spartanburg, including corporate property based on preliminary information and past experience. Further, Mrs. Vise testified that the official figures for the value of assessed property in the City of Spartanburg did not change significantly from the estimate furnished on June 6, that the total value of all assessed property in the City of Spartanburg was known on August 29, 1975 and that in September the tax notices were mailed to the individual taxpayers. Significantly she testified that due to errors resulting in additions and deletions and appeals of assessments, there were changes in the total value of all assessed property continuing until the end of the tax year.

Mr. W. H. Carstarphen, City Manager of the City of Spartanburg, testified that although taxes are collected on a calendar year basis, the City of Spartanburg operates on a fiscal year basis from July 1, to June 30. Mr. Carstarphen testified that since taxes are not collected until the end of the year, it was necessary for the City of Spartanburg to borrow funds in anticipation of collecting taxes in order for the City of Spartanburg to operate during the first part of its

fiscal year. For this period, the City of Spartanburg borrowed a total of $1,350,000.00. South Carolina law requires that before these funds could be borrowed, it was necessary for the City of Spartanburg to enact a tax ordinance setting its tax levy for the tax year. Finally, the evidence shows that 27% of the City's Revenue is derived from property taxes and that the remainder of the City' Revenue is derived from State and Federal sources and other City Taxes and charges.

In regard to the individual plaintiff, John E. Simkins, the stipulations show that for the tax year 1974, the appraised value of his property was $13,650.00 and that for the tax year 1975, the appraised value of his property was $25,000.00. It was stipulated that the plaintiff received a notice of the new assessment during the year 1975 and that he did not appeal the increase in his assessment. As a result of this increased assessment, plaintiff's taxes in the City of Spartanburg increased from $82.08 in 1974 to $151.20 in 1975. Based on these facts, plaintiff contends that the increase of his taxes in the amount of $69.12 is illegal and unconstitutional.

The only issue to be decided, is whether the City of Spartanburg, in enacting its tax ordinance for the 1975-1976 fiscal year, acted in violation of the South Carolina Constitution, as alleged by plaintiff.

Plaintiff contends that before the tax levy is set the total value of all property subject to tax must be known with certainty. However, an examination of the Constitution of South Carolina reveals no such requirement. The Constitution does require an assessment as a prerequisite for the imposition of a valid tax but as the term is used in the various provisions of the South Carolina Constitution, assessment means the value placed upon property for the purpose of taxation by officials appointed for that purpose. *Meredith v. Elliott*, 247 S. C. 335, 147 S. E. (2d) 244. Therefore, the term assessment as used in the Constitution, relates to the appraisal process by which a value is as-

signed to individual parcels of real and personal property. The fact that there is some delay between the time the individual parcels of property are assessed and the time that the administrative process of adding all the assessed values together and all errors are removed and all assessment appeals are decided is not significant. The facts in this case clearly show that all property subject to tax in the City of Spartanburg was assessed by the proper authorities. The facts further show, that the individual tax burden to be borne by the taxpayers was determined by applying the tax levy established by the City of Spartanburg against the assessed value of taxable property. Therefore, the City of Spartanburg acted pursuant to the South Carolina Constitution and the laws enacted thereunder.

Further, there would seem to be no basis to plaintiff's contention that the City of Spartanburg will realize a windfall in surplus collections of property taxes on account of the increase in the total of all assessments. The record shows that the City of Spartanburg anticipated that its total revenues for the fiscal year 1975-76 would equal approximately 12.9 million dollars. Of this amount the City of Spartanburg's budget shows that the City anticipated collecting $3,548,-883.00 in general property taxes. The testimony shows that the City has already collected $3,613,194.00, a surplus of $64,311.00 from this source of revenue. This surplus is less than 1% of the total anticipated revenue and is not so large a sum as to be termed a windfall. It is to be expected that actual property tax collections would produce more or less than anticipated and such a relatively small variance from the predicted figure does not form the basis for a valid cause of action.

The testimony of the City Manager and the budget submitted by him to City Council shows a heavy reliance upon Federal funds to balance the operating budget. But for this fact, the tax levy would have been substantially higher than 144 mills.

The fixing of the tax levy by City Council is a legislative functon which should and ought to carry with it the greatest respect by the courts unless it is shown that such function has been exercised in an arbitrary, unreasonable and illegal manner. In this case no such facts are shown.

The estimation of expenditures is a hazardous task in these inflationary times; the estimation of revenues is more difficult. If plaintiff's contentions are correct, the City could never plan for any surplus but must operate on such a strict basis that a deficit would likely be the result. The plaintiff has cited no law which requires the operation of the City on such a basis and the court knows of none.

Furthermore, the budget shows that about 27% of the City's reserve is derived from property taxes, 47% comes from federal sources, 8% from business license and permits, 3.8% from the State of South Carolina and 13.8% from other miscellaneous sources. A surplus in one category may be offset by a deficit in another.

In fact, neither plaintiff nor the City can know if there will be a surplus until the end of the fiscal year. The City Manager testified that so far one large expense was incurred which was not covered by the budget.

From all the evidence, I conclude that the City Council acted in accordance with the statutes and Constitution in fixing the tax levy for 1975, that these laws do not require them to wait until the total of all assessments can be known with certainty and that in the exercises of the legislative function can proceed on the basis of past experience and the best available estimate of revenue as was done in this case.

In the final analysis, plaintiff's increased taxes resulted from his increased assessment and not from any action of the City. He had a clear legal right to appeal his new assessment which he failed to do. He paid

his taxes under protest and has a clear legal remedy to recover them back if he can show they were illegally imposed which he failed to do Accordingly,

It Is Ordered That the complaint be and the same is hereby dismissed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.