21660

COUNTY OF LEE, Respondent, v. Cecil STEVENS, Appellant.
(289 S. E. (2d) 155)

*Atty. Gen., Daniel R. McLeod, Deputy Atty. Gen., Joe L. Allen, Jr., Senior Asst. Atty. Gen., G. Lewis Argoe, Jr.,* and *Asst. Atty Gen., Jackson E. Fields, Jr.,* Columbia, *for appellant.*

*George M. Stuckey, Jr.,* Bishopville, *for respondent.*

March 3, 1982.

LITTLEJOHN, Justice:

The sole issue before us is: Does the authority to set the tax rate for property taxation purposes in Lee County belong to its governing body, Lee County Council, or to its Auditor, Cecil Stevens?

The facts are not in dispute. On June 26, 1979, County Council adopted a budget for the 1979-80 fiscal year and enacted by ordinance a tax rate of 118 mills. Thereafter, the Auditor determined that this rate would result in a tax surplus and reduced it to 115 mills. The Auditor was then duly directed before the Circuit Court to show cause why he did not accept the initial tax rate set by County Council. Following a hearing, the trial judge held that the Auditor had no authority to alter or amend the tax rate set by County Council. The Auditor appeals.

Our resolution of this matter necessitates a brief review of the framework within which property taxes are levied.

## I. ELEMENTS OF PROPERTY TAXATION

Taxes for meeting public expenses are annually determined in a budget set by a particular governing body representing its respective public segment, e.g., state, county, and city levels of government. Property taxes are levied to help provide the necessary revenue to meet the expenditure found in the budget. The power to tax, as well as the method of computing

and levying taxes, are controlled by the Constitution and applicable statutes.

There are two elements to any property tax system: (1) the tax rate, and (2) the property value.

Tax rate is generally reflected in "mills," or "millage rate." A mill is simply a unit of monetary value equal to one tenth of a cent, or one thousandth of a dollar. Webster's Third International Dictionary, 1434 (1967). A tax rate of 150 mills translates into .15 (15 cents) tax per $1.000.

Property value involves "actual value" and "assessed value." Actual value simply denotes the true market value of the property. Assessed value is a valuation placed upon property for the purpose of taxation. *Powell v. Chapman,* 260 S. C. 516, 197 S. E. (2d) 287 (1973). It is normally a small fractional part of the actual value. These fractional ratios are statutorily provided in § 12-43-220, Code of Laws of South Carolina (Cum. Supp. 1980). See, generally, Article X, South Carolina Constitution.[1]

Individual property taxes are determined by multiplying the tax rate (millage) times the assessed value of the particular property. Either of the two elements standing alone is relatively meaningless; only when combined with each other is their true tax impact revealed. In general terms, the appropriate tax rate is reached by dividing the assessed value of the property to be taxed into that part of the budget to be generated by property taxes.

The annual county budget must be adopted prior to the beginning of the new fiscal year. County government, for budgetary purposes, operates on a fiscal year running from July 1 through June 30 of the following year. § 4-9-140, Code of Laws of South Carolina (1976). Thus, the new county budget must be prepared prior to June 30. The Lee County

---

[1] The use of assessment ratios has been criticized as being "an unnecessary step . . . . apparently designed to mislead the people into thinking they are underassessed since the tax rate is applied against a low figure [low property valuation]." *Quirk and Watkins, A Constitutional History of the Property Tax in South Carolina,* 26 S.C.L.Rev. 397, 474 (1974).

Council complied with that requirement by adopting its budget on June 26. It also set the tax rate (118 mills) at that time.

## II. AUTHORITY TO SET TAX RATE

We hold the authority to set the tax rate belongs to the county governing body. We refer to two statutory provisions, one relating to the authority of county government and the other concerning the duties of the auditor:

(1) Section 4-9-30, Code of Laws of South Carolina (Cum. Supp. 1980), empowers the county government:

(5) to assess property and levy ad valorem property taxes and uniform service charges, *including the power to tax different areas at different rates related to the nature and level of governmental services provided and make appropriations for functions and operations of the county* . . . (Emphasis added.)

(2) Section 12-39-180, Code of Laws of South Carolina (1976), requires the county auditor to calculate individual property taxes *after receiving the rates and sums to be levied for the coming year.*

## III. TIME TO SET TAX RATE

As we said earlier, the tax rate is determined by dividing the assessed value into the amount of cash needed for the budget. The auditor argues that under § 12-39-150 the assessed value is not known until September 30; therefore, he submits, the millage rate could not accurately be calculated three months earlier on June 26.

The chronological order of steps involved in property taxation is set out in the Code. The process is framed within a calendar year basis running from January 1 through December 31. Steps to be taken are generally as follows:

A schedule of all real and personal property is assembled. See, generally, Title 12, Chapter 37 of Code (1976 and Cum. Supp. 1980). Returns of all real estate and improvements must generally be filed with the auditor between January 1 and March 1. §§ 12-37-640, 640, 12-39-60. Immediately after the time period for filing returns, the county is canvassed for the

purpose of discovering and reporting any and all taxable property not returned to the auditor § 12-41-60. The property not returned is listed and valued on or before the first Tuesday in March. § 12-41-90. On the fourth Tuesday in March, the county boards of equalization first meet at the county Auditor's office to begin equalization the valuations of all property, real and personal, which has been assembled and listed. §§ 12-43-30, 12-43-40. During the calendar year 1975, each county was required to initiate an equalization program to map and re-appraise all real property unless it had already done so § 12-43-210. Uniform assessment values were generally imposed for statewide use § 12-43-220. Any increase or decrease in real property taxes resulting from this mandatory program was limited to a certain percentage change. §§ 12-43-270, 12-43-280. The valuations established are used for the following year's taxation purposes.

§ 12-43-50. The returns and list of taxable property with the valuations fixed as in this article [§§ 12-43-10 through 12-43-60], shall be adopted by the county auditor for the purposes of taxation for the *ensuing year* and shall be permanently entered of record by him upon the tax books of the county. (Emphasis added.)

Thereafter, the Auditor makes out the official tax book, in which he lists the owners of taxable property, the real and personal property owned by each, and the equalized value of such property §12-39-150. On or before September 30, the Auditor must send to the governing body of his county information specifying the total real and personal property and the aggregate values of the real property § 12-39-140. The Auditor also must deliver to the Treasurer, by September 30, a second tax book as his warrant for the collection of the taxes, assessments, and penalties charged therein; both the Auditor's list and the Treasurer's list are referred to as the county "duplicate." § 12-39-150.

Immediately upon receipt of the tax duplicate, the county Treasurer begins collecting property taxes. § 12-45-40. All taxes are due and payable between September 15 and December 31. § 12-45-70.

As indicated by this review, the process of finalizing property valuations begins in March and must be completed by September 30. The valuations so reached are to be used for taxation purposes for the ensuing year. § 12-43-50, *supra*. It logically follows that the property tax rate set by the county government must be based upon the current valuations.

The attorney for Lee County Council stated during ■ arguments to this Court that the 118 millage rate was calculated by using only the preceding year's valuations. This was erroneous. The tax rate could not lawfully and accurately be fixed until the current property valuation was made known to County Council. As a practical matter, we are not certain of the best method to accomplish this requirement.

The most accurate method would be for County Council to set the tax rate only after the final valuations are known.

In *Simkins v. City of Spartanburg,* 269 S. C. 243, 237 S. E. (2d) 69 (1977), our Court held that a tax rate based in part upon estimated current property values obtained from the Auditor did not violate the South Carolina Constitution.

Plaintiff contends that before the tax levy is set the total value of all property subject to tax must be known with certainty. However an examination of the Constitution of South Carolina reveals no such requirement. The Constitution does require an assessment as a prerequisite for the imposition of a valid tax but as the term is used in various provisions of the South Carolina Constitution, assessment means the value placed upon property for the purpose of taxation by officials appointed for that purpose. *Meredith v. Elliott,* 247 S. C. 335, 147 S. E. (2d) 244. Therefore, the term assessment as used in the Consitution, relates to the appraisal process by which a value is assigned to individual parcels of real and personal property. The fact that there is some delay between the time the individual parcels of property are assessed and the time that the administrative process of adding all the assessed values together and all errors are removed and all assessment appeals are decided is not significant. The facts in this case clearly show that all property subject to tax in the City of

Spartanburg was assessed by the proper authorities. The facts further show that the individual tax burden to be borne by the taxpayers was determined by applying the tax levy established by the City of Spartanburg against the assessed value of taxable property. Therefore, the City of Spartanburg acted pursuant to the South Carolina Constitution and the laws enacted thereunder.

In adopting in essence the Order of the Circuit Judge, the Court recognized the fact that the millage may not always be determined with mathematical exactness. It adopted the language of the Circuit Judge when it said ". . . I conclude that the City Council acted in accordance with the statutes and Constitution in fixing the tax levy for 1975, that these laws do not require them to wait unil the total of all assessments can be known with certainty and that in the exercises of the legislative function can proceed on the basis of past experience and the best available estimate of revenue as was done in this case."

It is a fact of life that not all property taxes are ever collected. It is a fact of life that expenses cannot always be anticipated and budgeted with mathematical certainty. Circumstances develop which could not have been anticipated. On the other hand, sometimes expenses anticipated may be avoided. If in the last analysis during some particular year, there is a modest surplus or a modest deficit, no serious harm will come. Adjustments can be made the ensuing year.

We know of no reason why County Council of Lee County should not be allowed the same latitude that was permitted in *Simkins, supra.* It is conducive to good government that the same legislative authority which spends money levy the tax to raise the money needed to carry out its own budget.

IV. CONCLUSION

The authority to set the tax rate belongs to the county government. This authority must be exercised based upon property valuations to be used for the ensuing year.

Because various methods have been employed throughout the state, up to this date, we rule as a matter of practicability and reasonableness that the holding reached in this case shall apply prospectively only.

In the light of our ruling, we conclude that there is no error in the Judge's Order, settling the record on appeal. With or without the matter which appellant would have included, the result is the same.

Affirm.

LEWIS, C. J., and NESS, GREGORY and HARWELL, JJ., concur.