577 S.E.2d 457

**BEAUFORT COUNTY, South Carolina, Appellant,**

v.

**STATE of South Carolina and Richard
W. Holtcamp, Respondents.**

No. 25601.

Supreme Court of South Carolina.

Heard Jan. 8, 2003.

Decided March 3, 2003.

James S. Gibson, Jr., Stephen P. Hughes, and Mary Bass Lohr, all of Howell, Gibson & Hughes, P.A., of Beaufort, for Appellant.

Wendy Bergfeldt Cartledge, of Columbia, for Respondent State of South Carolina.

Robert L. Widener and Erik P. Doerring, both of McNair Law Firm, of Columbia, for Respondent Richard W. Holtcamp.

Justice BURNETT.

Beaufort County appeals the circuit court's order granting summary judgment in favor of the State, finding S.C.Code Ann. § 27–32–240 (Supp.2000) does not violate S.C. Const. art. X. We affirm.

## FACTS

Beaufort County asserts S.C.Code Ann. § 27–32–240 violates S.C. Const. art. X. The State contends the statute is constitutional. The Circuit Court granted Richard Holtcamp ("Holtcamp") intervenor status and granted the State's motion for summary judgment.[1]

As no facts are in dispute, no party argues summary judgment was improper as a matter of law. The sole issue is whether § 27–32–240 violates S.C. Const. art. X.

---

1. Both Beaufort County and the State moved for summary judgment. Holtcamp filed a motion supporting the State's motion and opposing Beaufort County's motion. The circuit court granted the motion of State and Holtcamp. Beaufort County's motion for reconsideration was denied.

**DISCUSSION**

■ Beaufort County argues Article X prohibits the legislature from using different methods to determine fair market value in two sub-classes of a particular class of property. We disagree.

■ Because this Court is reluctant to find a statute unconstitutional, every presumption is made in favor of its constitutionality. *Knotts v. South Carolina Dep't of Natural Resour.*, 348 S.C. 1, 558 S.E.2d 511 (2002). A "legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Joytime Distribs. and Amusement Co., Inc. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999), *cert. denied* 529 U.S. 1087, 120 S.Ct. 1719, 146 L.Ed.2d 641 (2000). Beaufort County bears the burden of proving the statute unconstitutional. *See Knotts, supra.*

Beaufort County attempts to carry its burden by arguing the Legislature enacted § 27–32–240 in contravention of its limited powers under S.C. Const. art X, § 1 and S.C. Const. art. X, § 2(a). South Carolina's Constitution provides, in pertinent part:

> The General Assembly may provide for the ad valorem taxation by the State or any of its subdivisions of all real and personal property. **The assessment of all property shall be equal and uniform in the following classifications:**
>
> . . .
>
> (5) All other real property not herein provided for shall be taxed on an assessment equal to six percent of the fair market value of such property.

S.C. Const. art. X, § 1 (emphasis added).

It further provides:

> The General Assembly may define the classes of property and values for property tax purposes of the classes of property set forth in Section 1 of this article and establish

administrative procedures for property owners to qualify for a particular classification.

S.C. Const. art. X, § 2(a).

The statute at issue states:

> For purposes of property taxation, each time share unit, operating under a "vacation time sharing ownership plan" as defined in item (8) of § 27–32–10, must be valued in the same manner as if the unit were owned by a single owner. The total cumulative purchase price paid by the time-share owners for a unit may not be utilized by the tax assessor's offices as a factor in determining the assessed value of the unit. A unit operating under a "vacation time sharing lease plan" as defined in item (9) of § 27–32–10, may, however, be assessed the same as other income producing and investment property.

S.C.Code Ann. § 27–32–240(1).

Beaufort County construes the sentence "[t]he assessment of all property shall be equal and uniform in the following classifications" in § 1 as mandating the Legislature value property in each subset of the section uniformly. Beaufort County relies upon this Court's previous decisions which provide: "The word 'assessment' used in the Constitution and the statutes means 'the value placed upon property for the purposes of taxation by officials appointed for that purpose.' " *Meredith v. Elliott*, 247 S.C. 335, 342, 147 S.E.2d 244, 247 (1966) (*citing Owings Mills, Inc. v. Brady*, 246 S.C. 361, 143 S.E.2d 717 (1965)); *see also Simkins v. City of Spartanburg*, 269 S.C. 243, 237 S.E.2d 69 (1977).

Beaufort County avers this definition clarifies the Constitution as requiring "[t]he [value placed upon property for the purposes of taxation] shall be equal and uniform in the following classifications ..." As such Beaufort County believes the Legislature cannot require a local assessor to value similar property differently as is mandated by § 27–32–240.

The *ad valorem* tax is a product of three separate sets of numbers: the assessment ratio, the millage rate, and the fair market value of the property. *Ad valorem* taxes are calculated by multiplying the fair market value of a property by its assessment ratio to obtain the assessed value. The assessed value is then multiplied by the millage rate to determine the

property tax owed. *Homeowner's Guide to Property Taxes in South Carolina,* South Carolina Dep't of Revenue 3; *see also Newberry Mills Inc. v. Dawkins,* 259 S.C. 7, 190 S.E.2d 503 (1972) (discussing assessment ratio, millage rate, values and calculation of property tax).

Three separate entities establish the three values. The millage rate is determined by local government. The South Carolina Constitution prescribes the assessment ratio. S.C. Const. art. X, § 1. The Legislature is empowered to prescribe the method of valuation to determine the fair market value of properties enumerated in § 1. *See* S.C. Const. art. X, § 2(a); *South Carolina Tax Comm'n v. South Carolina Tax Bd. Of Rev.,* 305 S.C. 183, 407 S.E.2d 627 (1991) (Legislature is empowered to define value); *South Carolina Tax Comm'n v. South Carolina Tax Bd. Of Rev.,* 278 S.C. 556, 299 S.E.2d 489 (1983).

Section 2 of Article X further confers upon the Legislature the power to "define the classes of property and values for property tax purposes of the classes of property set forth in Section 1." The section is logical only if read to allow the Legislature to define sub-classes of property for those classes enumerated in § 1 and to determine how each sub-class is valued for tax purposes. Section 2's grant of legislative power to "define the classes of property" would be meaningless were the intent of § 1 to treat all types of real property the same for tax purposes. *Cf. Davis v. County of Greenville,* 322 S.C. 73, 470 S.E.2d 94 (1996) ("A statute must receive such construction as will make all of its parts harmonize with each other and render them consistent with its general scope and object.").

Section 1 does not prohibit the Legislature from requiring different types of real property be valued the same. Instead, it requires each category of property enumerated retain the same assessment ratio as other property within its class. In other words, the South Carolina Constitution requires that an assessment ratio be applied to eight distinct classes of property, and that this assessment ratio must be uniform and equal to property within each class. The methodology to determine the **value** of the property remains a matter for the General Assembly.

Beaufort County's reliance on *Meredith, Owings Mills,* and *Simkins,* is misplaced. This Court in each case interpreted a version of Article X since amended. Under the previous Article X, the Legislature classified property, set the valuation method and set assessment rates. *See* S.C. Const. art. X (1976) ("The General Assembly shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe regulations to secure a just valuation for taxation of all property, real, personal and possessory....."). The amended Article X removed the Legislature's ability to set assessment rates in § 1 while maintaining its power to classify property for valuation purposes and to establish valuation methods under § 2.

*Meredith, Owings Mills,* and *Simkins* must be viewed in light of the former Article X. A closer reading of each opinion reveals this Court did not use the term "assessment" to refer to the valuation of property as Beaufort County insists. Instead, the term was used generically to refer to the three-step process to determine the taxable value of the property. Further, to read "assessment" to equal "value" is to ignore the explicit grant of power to the Legislature in § 2 to "define the classes of property and **values** for property tax purposes of the classes of property set forth in Section 1." S.C. Const. art. X, § 1 (emphasis added).

Section § 27–32–240 does not violate S.C. Const. art. X. The Legislature is empowered to determine that a "vacation time sharing ownership plan" is valued differently from a "vacation time sharing lease plan" under the power granted by § 2.[2]

## CONCLUSION

Accordingly, we **AFFIRM** the circuit court's order.

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.

---

2. Additionally, Judge Thomas Kemmerlin's order correctly notes the intent of the Legislature in enacting § 27–32–240 was to statutorily prohibit the tax assessor from stacking the purchase price paid for each week of time for each time-share unit. Instead, the Legislature required an assessor to value only the underlying land and building itself. In doing so, the Legislature mandated that "time-share units are to be valued for tax purposes at what a single owner would pay for the unit, not the aggregate price paid by all owners."