609 S.E.2d 808

**Linda ANGUS, individually, and as class representative for all those similarly situated, Appellant/Respondent,**

v.

**The CITY OF MYRTLE BEACH, Respondent/Appellant.**

No. 25934.

Supreme Court of South Carolina.

Heard June 10, 2004.
Decided Jan. 31, 2005.
Rehearing Denied March 23, 2005.

L. Sidney Connor, IV, of Kelaher, Connell & Connor, P.C., and Natale Fata, both of Surfside Beach, for appellant/respondent.

James B. Van Osdell and Charles B. Jordan, Jr., both of Van Osdell, Lester, Howe & Jordan, of Myrtle Beach, for respondent/appellant.

Justice MOORE:

This action was brought by appellant/respondent Angus, a municipal taxpayer, challenging the property tax rollback millage rate adopted by respondent/appellant City of Myrtle Beach (Myrtle Beach) for the 1999–2000 fiscal year. Angus appeals a final order holding that Myrtle Beach did not violate S.C.Code Ann. § 6–1–320 (2004) or § 12–37–251(E) (2000). Myrtle Beach cross-appeals an order certifying a class of municipal taxpayers, and an order refusing to join the South Carolina Department of Revenue as a party. We affirm the rulings appealed by Myrtle Beach. We agree with Angus that the millage rate was improperly calculated, reverse on this issue, and remand for the trial court to determine the appropriate relief.

### FACTS

As provided by § 6–1–320(A),[1] in most years, a municipality may raise its general operating (GO) millage rate above that of the year before only by the amount the consumer price index rose the preceding year. In a year when a reassessment program[2] is implemented, however, the "rollback mil-

---

1. Section 6–1–320(A) provides:

   Notwithstanding Section 12–37–251(E), a local governing body may increase the millage rate imposed for general operating purposes above the rate imposed for such purposes for the preceding tax year only to the extent of the increase in the consumer price index for the preceding calendar year. However, in the year in which a reassessment program is implemented, the rollback millage, as calculated pursuant to Section 12–37–251(E), must be used in lieu of the previous year's millage rate.

2. Countywide reassessments and equalizations of real property are conducted every fifth year. S.C.Code Ann. § 12–43–217 (2000). Mu-

lage," rather than the previous year's millage, is the base GO millage rate. Rollback millage is calculated under § 12–37–251(E).[3]

Following a countywide reassessment in 1998, Myrtle Beach was required to use rollback millage calculated under § 12–37–251(E) in setting its 1999–2000 GO millage rate. Section 12–37–351(E) requires that the total assessed value of property, which is the divisor used in calculating the rollback millage, be adjusted by deducting the amount of the increase attributable to (1) new construction, (2) renovations to existing structures, and (3) property and improvements not previously taxed. In calculating its rollback millage for 1999–2000, Myrtle Beach applied an additional variable to further reduce property values; it denominated this variable the "appeals allowance." This variable took into account the fact that some owners would successfully appeal the new valuations placed on their properties. Myrtle Beach used an appeals allowance of 7.5%.

In addition, Myrtle Beach adjusted the dividend used in calculating the rollback millage. This dividend is the prior year's property tax revenues. Although § 12–37–251(E) does not provide for any adjustment of this figure, Myrtle Beach applied an estimated collection rate of 86% to account for the fact that not all taxes billed would be collected. It is undisputed that in making these adjustments to the rollback millage calculation specified by § 12–37–251(E), Myrtle Beach did not utilize the provisions of § 6–1–320(C)[4] which allows the mil-

---

nicipalities and other taxing entities within a county use the county's property valuations.

**3.** Section 12–37–251(E) provides:

Rollback millage is calculated by dividing the prior year property tax revenues by the adjusted total assessed value applicable in the year the values derived from a countywide equalization and reassessment program are implemented. This amount of assessed value must be adjusted by deducting assessments added for property or improvements not previously taxed, for new construction, and for renovation of existing structures.

**4.** Section 6–1–320(C) provides:

The millage rate limitation provided for in subsection (A) of this section may be overridden and the millage rate may be further increased by a positive majority vote of the appropriate governing

lage rate limitation to be overridden and the millage rate increased by a positive majority vote of the governing body at a special public meeting.

## ISSUE

Did the trial court err in determining that Myrtle Beach's method of calculating rollback millage was proper?

## DISCUSSION

Angus contends that the circuit court erred in holding Myrtle Beach did not violate § 12–37–251(E) by adding two variables to the statutory formula for calculating rollback millage without holding a public hearing as required by § 6–1–320(C). We agree that § 12–37–251(E) and § 6–1–320(A) do not permit Myrtle Beach to make these adjustments unless it utilizes the provisions of § 6–1–320(C).

As noted above, § 12–37–251(E) permits the use of three adjustments in calculating the rollback millage. Angus argues, and we agree, that application of the statutory maxim *inclusiounius est exclusio alterius* mandates that these variables and no others be used in calculating the rollback millage. The circuit court found this maxim inapplicable, reasoning that the variables used by Myrtle Beach "appear to be sensible and necessary devices" and that denying their use "would lead to a result that is unworkable, inefficient, inaccurate, and problematic." The variables permitted by the statute are clear and unambiguous; regardless of the merit of Myrtle Beach's formula, it is not what the statute allows. *See Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000) (where statutory language is clear and unambiguous, enumeration of certain exceptions excludes others).

The fixing of a tax rate is a legislative function that must be given the greatest respect by the courts *unless* that function is exercised in an illegal manner. *Simkins v. City of*

---

body. The vote must be taken at a specially-called meeting held solely for the purpose of taking a vote to increase the millage rate. The governing body must provide public notice of the meeting notifying the public that the governing body is meeting to vote to override the limitation and increase the millage rate. Public comment must be received by the governing body prior to the override vote.

*Spartanburg,* 269 S.C. 243, 237 S.E.2d 69 (1977).[5] It is basic hornbook law that when a government entity levies a tax, "the method outlined in the applicable law must be followed, at least in substance and especially concerning all mandatory provisions." 16 McQuillin Mun. Corp. § 44.97 (3d ed. 1998). We conclude Myrtle Beach's use of non-statutory variables violates § 12–37–251(E). Further, Myrtle Beach failed to hold a public meeting as provided under § 6–1–320(C) which would have allowed it to legally override the mandatory requirements of subsection (A).

## CONCLUSION

We hold the trial court erred in upholding Myrtle Beach's use of non-statutory variables to calculate rollback millage without the override vote required under § 6–1–320(C) and we remand for the trial court to determine the appropriate relief. We affirm Myrtle Beach's appeal pursuant to Rule 220(b), SCACR. *See Waller v. Seabrook Island Prop. Owners Ass'n,* 300 S.C. 465, 388 S.E.2d 799 (1990) (decision to certify a class rests in trial judge's discretion); *Charleston County Parents for Public Schools, Inc. v. Moseley,* 343 S.C. 509, 541 S.E.2d 533 (2001) (party that is not indispensable need not be joined under Rule 19, SCRCP).

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

---

**5.** Despite our recognition of this basis principle in *Simkins,* we excused an illegal tax rate in *County of Lee v. Stevens,* 277 S.C. 421, 289 S.E.2d 155 (1982). In that case, a county auditor challenged the county's authority to set the tax rate before current property values were known. We held the modest deficit caused by the county's error could be excused, but we prospectively ordered the tax rate to be based upon current property valuations. We found a prospective ruling necessary as a matter of "practicability and reasonableness" because of the various methods in use at the time by local governments statewide.

We view *County of Lee v. Stevens* as a narrow exception and decline to follow it here. The critical factor in that case was that there was no standard procedure in place to accomplish the statutory requirement at the local level; to strictly enforce that requirement would have caused havoc for local governments statewide. Here, there is no such special circumstance. We cannot condone a taxing entity's illegal acts in fixing the tax rate simply because the resulting impact may be characterized as modest.

6

TOAL, C.J., and Acting Justice DEADRA L. JEFFERSON, concur.

PLEICONES, J., dissenting in a separate opinion in which BURNETT, J., concurs.

Justice PLEICONES dissenting:

I respectfully dissent. I agree that Myrtle Beach erred in relying upon non-statutory factors in computing the GO roll-back millage. I would find, however, that Angus has shown no prejudice and would therefore affirm the circuit court's order denying her relief.

At the time Myrtle Beach was calculating its 1999–2000 GO millage rate in June 1999, it was required to estimate the prior year's property tax revenues since final figures are not provided to it by the county auditor until August. The city estimated its prior year's revenue by applying an 86% "collection rate" to the overall amount billed. Further, while Myrtle Beach had available the new assessment values, the appeals process whereby property owners may seek a reduction in valuation was not yet complete.

The use of non-statutory variables violated S.C.Code Ann. § 12–31–251(E) (2000). The reality of municipal budgeting is that it is an inexact science, relying as it must upon estimates and "best guesses." As this Court recognized in *Simkins v. City of Spartanburg*, 269 S.C. 243, 237 S.E.2d 69 (1977), municipalities must rely upon imperfect and incomplete calendar year figures to meet their obligation to enact a fiscal year budget. *Simkins* held that a city "can proceed on the basis of past experience and the best available estimate of revenue...." *Id.* at 249, 237 S.E.2d at 72; *see also County of Lee v. Stevens*, 277 S.C. 421, 289 S.E.2d 155 (1982) ("It is a fact of life not all property taxes are ever collected").

Although Myrtle Beach erred in relying on the nonstatutory variables, Angus has not shown prejudice. First, she does not challenge the circuit court's finding that Myrtle Beach could lawfully have levied a total of 65 mills in 1999–2000, but levied only 61. Further, Angus does not challenge the circuit court's calculation showing that Myrtle Beach's GO millage for 1999–2000 exceeded that permitted by § 12–37–251(E) by approximately 4.44 mills. When the city learned it had overcollected

taxes for 1999–2000, it reduced the following year's millage by 2.3 mills. As the Court said in *Lee County*, "If in the last analysis during some particular year there is a modest surplus or a modest deficit, no serious harm will come. Adjustments can be made the ensuing year." *Id.* at 427, 289 S.E.2d at 158. Myrtle Beach made such an adjustment.

I would hold that while Myrtle Beach erred in calculating the GO rollback millage, this error was within the latitude afforded taxing entities that must rely on incomplete figures when calculating millage rates.[6] *Simkins, supra; Lee County, supra.* Further, I recognize that in calculating this rollback millage, Myrtle Beach relied upon the advice provided by the Department of Revenue to all municipalities located in counties that had undergone a reassessment.[7] The effect of the majority's decision today is to subject these municipalities to refund litigation over relatively nominal sums. Such a result is not required by our precedents, and imposes an unnecessary fiscal burden on our cities and their current taxpayers. I would affirm the order of the circuit court.

BURNETT, J., concurs.

---

6. A taxpayer, whose property tax bill was too high because a city or county made a minor error in calculating the millage rate in reliance upon advice from the Department of Revenue, is in a different position from a taxpayer who has been required to pay a disproportionate share of property taxes as the result of the taxing entity's adoption of a patently unlawful ordinance. Thus, Angus and others affected by Myrtle Beach's good faith efforts to set the appropriate millage are not in the same position as Charleston County taxpayers who were unlawfully taxed pursuant to an ordinance capping valuation increases for owner-occupied residences at 15% while placing no cap on non-owner occupied property. These taxpayers were entitled to a refund. *See Riverwoods, LLC v. County of Charleston*, 349 S.C. 378, 563 S.E.2d 651 (2002). The difference between the taxing decision made by Myrtle Beach and that made by Charleston County is more than a matter of degree: Charleston created two classes of taxpayers, in order to lighten the tax burden on one group by shifting it to the other. Further, the impact of the Charleston Ordinance on owners of non-capped property could not be characterized as "modest."

7. Countywide reassessments and equalizations of real property are conducted every fifth year. S.C.Code Ann. § 12–43–217 (2000). Municipalities and other taxing entities within a county use the county's property valuations.